ROBERT CRANE, Appellant, *v.* PERFECT FILM & CHEMICAL CORPORATION, Respondent.

First Department, February 22, 1972.

*Bernard Gartlir* of counsel (*Sylvia D. Garland* with him on the brief; *Hofheimer, Gartlir, Gottlieb & Gross,* attorneys), for appellant.

*Laurence P. Shiff* of counsel (*Stephen M. Axinn* with him on the brief; *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for respondent.

MACKEN, J.   At issue is whether, on the facts presented, plaintiff may enforce a stock purchase option granted him by defendant's predecessor.

On August 15, 1963, by written contract, plaintiff was employed as an executive of a wholly owned subsidiary of Perfect Photo, Inc., a predecessor of defendant, for a term of five years.   September 9, 1964, while so employed, Perfect granted plaintiff an option to purchase 3,000 shares of its common stock at its then market value.   The grant recited that the option was given " as an inducement to remain in the service of the Corporation and as an incentive for increasing Employee's efforts during such service ".   The option was to terminate September 8, 1969 or,

if earlier, "upon the date on which Employee shall cease to be an employee of the Corporation or a subsidiary of the Corporation". December 1, 1965 plaintiff's employment was extended to August 31, 1970 and his salary increased.

September 20, 1968 defendant sold the assets of its subsidiary by which plaintiff was employed to Berkey Photo, Inc., a stranger to Perfect, and as part of the transaction and without notice to or knowledge by plaintiff, assigned his employment contract to Berkey. Plaintiff was first informed of the sale the night of the transaction and thereafter continued to perform for Berkey substantially the same services he had theretofore rendered Perfect and at the same salary.

It may here be noted that although the decision at Special Term states that plaintiff's employment by Berkey commenced in November, 1968 I fail to find support for this conclusion in the record. The contract of sale to Berkey provided "Consummation of the transaction * * * shall take place immediately following the execution hereof on September 20, 1968", and as further evidence that the transfer was immediate "Berkey does hereby agree to collect on behalf of Seller * * * any and all accounts receivable * * * which *as of the date hereof,* are due and owing Seller" (emphasis supplied). In any event, I do not consider the date of plaintiff's employment by Berkey material and respondent seems to agree, saying in its brief: "Appellant's assertion that his employment by Perfect ceased on September 23, 1968 rather than on or about November 1, 1968 in no way alters Justice Asch's decision since he clearly held that the option rights were abandoned by appellant when he left Perfect and became an employee of Berkey — that is, under the present assertion of appellant, on September 23, 1968."[1].

May 7, 1969 plaintiff purported to exercise the option to purchase the full amount of stock described in the grant and defendant refused to comply on the ground that the option terminated when plaintiff ceased to be its employee and entered Berkey's employ. In this ensuing action plaintiff's motion for summary judgment has been denied and defendant granted summary judgment dismissing the complaint.

Special Term correctly found that the assignment breached plaintiff's employment contract but apparently adopted defendant's contention that the option grant was separate and apart from the employment contract. While, when given, it may be that the grant was *nudum pactum,* plaintiff then being obligated

---

1. September 20 was Friday and the 23 the next business day.

to continue in defendant's employ until 1968 and presumably to exert his best efforts in performing his duties, it must be presumed that plaintiff's subsequent consent to extend his term of employment was induced at least in part by the option and brought to fruition Perfect's stated purpose for granting it. In these circumstances, the option became part of the employment contract.

An employment contract for a stated term may not be terminated by the employer without a " cause sufficient in law which would justify an employer in discharging an employee ". (*Vogel* v. *Pathe Exch.*, 234 App. Div. 313, 318; *Parsil* v. *Emery*, 242 App. Div. 653; 36 N. Y. Jur., Master and Servant, §§ 26, 27.) The option grant being part of the employment contract, plaintiff's continued employment by defendant, essential to the life of the option, might not be aborted by defendant without such cause. As was found by Special Term and not disputed by defendant, the latter's valid assignment of the employment contract would breach that contract. Plaintiff's employment would thereby be terminated without cause. But defendant argues that since the assignment of this contract for personal services could not be enforced without plaintiff's consent (3 N. Y. Jur., Assignments, § 7 and cases therein cited), by honoring the assignment and entering Berkey's employ, plaintiff voluntarily terminated his employment by defendant and thereby relinquished his rights under the option. This position is untenable.

While plaintiff might have elected to consider the assignment invalid, the defendant having made the assignment may not be heard to so assert. " Generally the right to contest the validity of an assignment obtains only to persons who can raise the particular ground of contest in their own right, and this rule applies whether the objection is   *   *   *   the nonassignability of the subject matter ". (6 C. J. S., Assignments, § 81.) Defendant's termination of plaintiff's employment, effected by the assignment, did not shorten the period within which plaintiff might exercise the option. The exercise was timely and plaintiff is entitled to damages for defendant's failure to perform. (*Parsil* v. *Emery*, 242 App. Div. 653, *supra*.)

Defendant urges that plaintiff's relief, if any, must be for breach of the employment contract rather than of the option grant as alleged in the complaint. The measure of damages would be the same in either case and while I consider the complaint sufficient, this court may and does amend the pleadings to conform to the proof. (*Dampskibsselskabet Torm A/S* v. *Thomas Paper Co.*, 26 A D 2d 347; *Irving Finance Corp.* v.

*Wegener,* 30 A D 2d 958; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3025.31.)

The order appealed from should be reversed on the law with costs; plaintiff's motion for summary judgment granted; defendant's cross motion for summary judgment denied; and the case remanded to the court below for assessment of plaintiff's damage.

STEUER, J. (dissenting). The basic facts in this litigation are not in dispute for the purposes of this application. In 1953 plaintiff entered into an employment contract with a subsidiary of defendant's predecessor. Plaintiff's position was a responsible one, he being the president of a subsidiary and in charge of one of his employer's plants. In 1964 an agreement styled a " Grant of Option " was entered into between the parties. By its terms plaintiff in consideration of continuing to work for his employer was given an option to purchase up to 3,000 shares of the corporation's common stock at $3.75 per share. The option could be exercised at any time prior to September 8, 1969, and was binding on any successor corporation by way of consolidation, merger or sale of assets. The option was to terminate if plaintiff ceased to be an employee of the granting corporation or any subsidiary of the same.

In 1965 the employment contract was extended to 1970 at an increased salary. In June, 1966 the granting corporation merged with certain others to form the present defendant. No question of liability on this score is presented. In September, 1968 defendant sold the plant and the business where plaintiff performed his services. This did not affect several other plants which defendant continued to operate. As a part of the sale, defendant assigned plaintiff's employment contract to the purchaser.

Plaintiff had no prior notice of the sale or the assignment of the contract. However, when informed of it he continued to work at the plant in the same capacity and at the same salary, which was paid by the purchaser. Some eight months later, and within the period provided in the grant, plaintiff sought to exercise the option and defendant refused to deliver the stock on the ground that he had ceased to be an employee.

While it is beyond dispute that plaintiff had ceased to be an employee of defendant or of any corporation affiliated with it, he claims that the provision requiring him to be an employee is not a bar to his claim. This contention is based on the fact that his employment terminated without fault on his part.

We believe that Special Term rightfully regarded those cases which are based on a discharge without good cause (see *Carter*

v. *Bradlee,* 245 App. Div. 49) as not bearing on the situation. While it is quite true that the purported assignment of plaintiff's contract was without validity without his consent, this is not the controlling factor. It is equally true that had he been previously informed and agreed to the transfer his employment would have terminated by mutual consent and no rights dependent on that employment would have survived. It is difficult to see why plaintiff's conduct in accepting the change in employers and continuing to serve without any protest whatsoever does not amount to a ratification of the action taken. There was mutual agreement, and no question of fault, good cause or good faith is involved.

It has been argued that plaintiff should recover because some degree of economic compulsion attended the transfer of plaintiff's contract. It should be noted that plaintiff makes no such claim. On the contrary, it appears that he was entirely agreeable to the transaction. His sole claim is that he did not realize that the change of employment would terminate his option rights. While this would explain his good faith in making the claim, it does not give rise to any right to change the contract he made.

The order should be affirmed.

Nunez, J. P., Kupferman and Tilzer, JJ., concur with Macken, J.; Steuer, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on June 30, 1971, reversed, on the law, plaintiff's motion for summary judgment granted, defendant's cross motion for summary judgment denied, and the case remanded to the court below for assessment of plaintiff's damage. Plaintiff-appellant shall recover of defendant-respondent $50 costs and disbursements of this appeal.