Kenneth **LEVINE**, Plaintiff,

v.

**ZERFUSS OFFSET PLATE SERVICE COMPANY**, Defendant.

No. 79 Civ. 0382 (KTD).

United States District Court, S. D. New York.

June 30, 1980.

Hayes & Jenkins, New York City, for plaintiff; L. Mifflin Hayes, New York City, of counsel.

Irving Singer, Hempstead, for defendant.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This diversity action was instituted by Kenneth Levine, a New Jersey resident, against the defendant, Zerfuss Offset Plate Company, a New York corporation, seeking to recover for breach of a written contract of employment. A two-day trial was held before me in May of this year. Based upon the testimony elicited at trial as well as the exhibits received in evidence, the following shall constitute my findings of fact and conclusions of law.

Kenneth Levine is a stripper who at one time worked for Creative Lithographics, Inc. At about the same time, William Zerfuss was also employed by Creative as a stripper-foreman. In late 1973, Creative decided to spin off its offset plate work. To this end, Creative offered to sell its offset business to William Zerfuss. After some negotiations, Mr. Zerfuss agreed to purchase the business and set up the defendant company. Although Zerfuss Offset was a separate legal entity, its main customer remained Creative. For the convenience of Creative, Zerfuss Offset was located in the same building as Creative and, in fact, sublet its space from Creative.

Sometime during early 1978, the President of Creative, Arthur Meyers, suggested that Zerfuss hire Kenneth Levine as stripper-foreman. Apparently, Zerfuss was in dire need of a stripper-foreman to handle all of Creative's work. As a result of Meyer's suggestion, Levine was hired by Zerfuss in May of 1978 and commenced working immediately. Thereafter, Zerfuss negotiated a contract with Kenneth Levine which was later reduced to writing in August, 1978. A portion of the contract set Levine's salary, his bonuses and established his working hours as 8:00 a. m. to 4:00 p. m. The contract also provided for a stock option whereby Levine could obtain ownership of 50 percent of the defendant corporation. Interestingly, the contract merely provides that Levine will be "engaged to work in the capacity of stripper and stripper foreman."

Apparently within two weeks after Levine started to work for the defendant in May of 1978, both Arthur Meyers and Salvatore Margarone started to complain to Zerfuss about Levine's performance. Their complaints were to the effect that work was not being completed on time; that work had to be returned for corrections; that Levine did not know the status of work in progress at the Zerfuss plant; and, that Levine was not authoritative with the Zerfuss employees. Both Meyers and Margarone testified as to making these complaints to William Zerfuss. And yet, 8 to 10 weeks after receiving these complaints, William Zerfuss executed the written contract which was prepared for him by his counsel and which is at the heart of the instant suit.

The evidence showed that during the entire term of his employment, there were complaints about Levine's performance lodged by the officials of Creative as well as by William Zerfuss. There is no doubt that during this period of time, Levine worked as a stripper. The testimony established that stripping entails detailed personal work which, by its nature is difficult to oversee. In addition, when not working as a stripper, Levine functioned as a stripper-foreman. In this capacity, he distributed work to other strippers at Zerfuss and did some checking of their work. His ability to function as a foreman, however, was limited for two reasons.

First, it was apparent from all the credible testimony that Creative kept the Zerfuss plant very busy. And, at times, the Zerfuss plant did not have the manpower to

handle the work. Thus, Kenneth Levine, concededly a top-rate stripper, was often forced to spend much of his day as a stripper to handle the daily stripping work which Creative demanded be completed quickly and competently.

Moreover, it was also clear from the testimony that when William Zerfuss was at the plant, he would take over as the shop foreman leaving plaintiff to assist with the stripping. Thus, Levine was left to function solely as a stripper when Zerfuss was at the plant.

In any event, it became increasingly apparent that for whatever reason Levine was not performing to the complete satisfaction of Creative. Finally, in December of 1978, William Zerfuss attempted to shift Levine to the night shift in order to placate Creative. When Levine refused to work at night, he was discharged.

■ Generally, an employee who does not work under an agreement for a definite term of employment may be discharged at any time, with or without cause. *See, e. g., Buian v. J. L. Jacobs & Co.*, 428 F.2d 531, 533 (7th Cir. 1970). However, where, as in the case at bar, the employment is for a definite term, an employee may not be discharged by the employer "without a 'cause sufficient in law which would justify an employer in discharging an employee.'" *Crane v. Perfect Film & Chemical Corp.*, 38 A.D.2d 288, 329 N.Y.S.2d 32 (1st Dep't 1972) *citing, Vogel v. Pathe Exchange, Inc.*, 234 A.D. 313, 318, 254 N.Y.S. 881, 886 (2d Dep't 1932).

■ The contract in issue does not condition the plaintiff's continued employment upon the performance of his duties to the personal satisfaction of William Zerfuss. Nor does the contract impose any express conditions upon plaintiff with respect to the performance of his duties. Indeed, the contract is silent in this regard. It states only that plaintiff's employment shall continue for a term of five years.

Under these circumstances, plaintiff was required to perform his work satisfactorily. Based upon the totality of credible evidence, I am convinced that Kenneth Levine performed satisfactorily as a stripper and as

a stripper foreman insofar as he was permitted to do so by Zerfuss. This is particularly true in view of the fact that the employment contract was entered into after Zerfuss had complete knowledge of Levine's on-the-job performance.

Furthermore, the incident which apparently triggered Levine's dismissal was his refusal to accept a transfer to the night shift. However, under the express terms of the employment contract, plaintiff was to work only from 8:00 a. m. to 4:00 p. m. He simply could not be compelled to work the night shift and his refusal to do so was clearly justified.

Finally, it was evident to me from the testimony elicited at trial that it was not William Zerfuss' dissatisfaction with the plaintiff's performance which was at the heart of Levine's discharge, but rather, the dissatisfaction of Arthur Meyers, the President of Creative. It was abundantly clear that although Zerfuss was a separate corporate entity, Creative enjoyed a very influential position with respect to the Zerfuss operation and Meyers was not reluctant to exercise this influence. Not only did Creative act as Zerfuss' landlord, but it also supplied the vast majority of Zerfuss' work. Indeed, without Creative, there would be no Zerfuss. In fact, William Zerfuss testified that if Creative moves out of the building it presently occupies and Zerfuss does not tag along with Creative to a new location, Zerfuss will surely go out of business.

Thus, I find that Levine's discharge was an unjustified breach of the employment contract and damages must be assessed against Zerfuss.

■ Turning now to the question of damages, the contract provides in pertinent part:

6. Employer agrees as follows:

a. To pay employee $600.00 dollars per week payable each week during the period of employment with a minimum $30.00 a week raise each year hereafter.

.    .    .    .    .

8. In addition to the fixed sum of salary previously mentioned, the corporation agrees to give an additional sum equal to $1,500.00 plus 5% of the gross earnings in

excess of $300,000.00 earnings of the corporation for each fiscal year of his employment hereunder, with a minimum of $5,000.00.

For the purpose of accounting, the corporation shall close their books, effective May 31, 1978 and the net income shall be determined for the period from June 1, 1978 through the subsequent year.

It is further agreed that the present net worth of the corporation is approximately $100,000.00, and that, therefore, each share of stock of the 100 shares issued, has a present worth of $1,000.00. Kenneth Levine shall have the option of purchasing stock at the rate of $1,000.00 per share, up to fifty (50) shares or 50% of the shares outstanding for a five (5) year period.

.    .    .    .    .

11. It is hereby further agreed that the corporation shall give an option to the employee to purchase from the corporation up to the amount of 50% of the corporation's stock. The value of said stock shall be $1,000.00 per share on the date of purchase.

.    .    .    .    .

12. It is hereby agreed that the Zerfuss Offset Plate Service Company, Inc. shall give at the end of two (2) years 10% of the stock which is at that time presently on its books to Kenneth Levine.

.    .    .    .    .

15. The corporation agrees that it shall not raise the salary of William Zerfuss or any of William Zerfuss' relatives unless the salary of Kenneth Levine is raised proportionately.

Kenneth Levine is given the absolute right to audit all of the books and records of the corporation and to hire an accountant to review same, and the corporation will cooperate with any accountant so hired.

Certain facts which bear upon the computation of damages are not disputed. These include

(1) In May, 1978, the parties executed a contract of employment, the pertinent provisions of which are quoted above;

(2) The defendant discharged plaintiff on September 13, 1978;

(3) Between June 1, 1978 through May 31, 1979, defendant had gross earnings of $436,700;

(4) Between June 1, 1979 through October, 1979, defendant had gross earnings of $225,000, 30% greater than the same period in the preceeding year; and

(5) In January, 1979, William Zerfuss increased his salary from $850 per week to $950 per week representing a 12% increase. See Joint Pre-Trial Order dated February 25, 1980.

In the Pre-Trial Order, dated February 28, 1980, plaintiff, under the section entitled plaintiff's contentions, set forth a detailed breakdown with respect to the damages he seeks. The total award sought by plaintiff is $210,059.09 and was computed as follows:

(1) Plaintiff was entitled to a salary of $600 per week for the first year and a $30 increase per week in each of the following years. Thus, plaintiff would have earned a yearly salary of:

$31,200 for the first year
$32,760 for the second year
$34,320 for the third year
$35,880 for the fourth year
$37,440 for the fifth year

To this was to be added an increase proportionate to any salary increase of William Zerfuss. In January, 1979, William Zerfuss increased his salary 12% and thus, plaintiff's yearly salary must be proportionately increased. These increases are as follows:

$1,872 for the first year
$3,931 for the second year
$4,118 for the third year
$4,305 for the fourth year
$4,492 for the fifth year

In addition, under the contract, plaintiff was entitled to an annual bonus of $1,500 plus 5% of the yearly gross revenues of the business in excess of $300,000 with a minimum bonus of $5,000 per year.

Finally, plaintiff was entitled to 10% of the outstanding shares of Zerfuss Offset after two (2) years and was given the op-

tion of purchasing up to 50% of the stock of the corporation at $1,000 per share.

Despite this detailed presentation of damages by plaintiff, defendant offered nothing either in the pre-trial order or at the trial to rebut these computations.

While it is clear that an award of damages may not be premised upon mere speculation or guesswork, *James Wood General Trading Establishment v. Coe*, 297 F.2d 651 (2d Cir. 1961), it is equally clear that once a plaintiff has demonstrated that he has been damaged, he need only demonstrate the amount of damages with reasonable certainty. *W. L. Hailey & Co. v. Niagara County*, 388 F.2d 746 (2d Cir. 1967). A wrongdoer has no right to insist upon a mathematically precise evaluation of the damages suffered. *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926–27 (2d Cir. 1977).

Plaintiff, having established entitlement to damages and offering a reasonable computation thereof, I find that he was damaged in the amount of $111,968 which, when reduced to present value, yields a sum of $109,876. In addition, plaintiff is entitled to 10% of the outstanding stock of Zerfuss as of June, 1980. The reasoning and computation underlying this award is as follows.

Plaintiff was unemployed for a period of one week. Thereafter, he secured a position as a stripper at a weekly salary of $375. This salary was increased after six months to $400 and apparently has remained at $400 per week. Thus, plaintiff's lost wages over the term of the contract in issue, totalling $190,318 with the 12% proportionate increase, and the yearly increase, must be reduced by the total wages plaintiff earned and will earn for the term of the contract from his present employment which totals $103,350. Thus, the sum of $86,968 represents the total salary plaintiff lost as a result of his wrongful discharge. When reduced to present value, plaintiff is entitled to recover the sum of $77,576.

In addition, plaintiff is entitled to a yearly bonus of $5,000 which, over the term of the agreement, totals $25,000 when reduced to present value, plaintiff is entitled to re-

cover the sum of $22,300. I have awarded plaintiff the minimum bonus since any increase in the gross revenues of Zerfuss is, at best, speculative.

Finally, plaintiff is entitled to receive 10% of the outstanding stock of Zerfuss as of June, 1980, which interest is valued at $10,000.

I decline to compensate plaintiff for the option to purchase up to 50% of the Zerfuss stock. It is a matter of conjecture whether plaintiff would have exercised the option at all. Thus, I will not engage in such speculation to increase plaintiff's damage award.

Settle judgment on five (5) days' notice.