**Ronald G. JONES, Plaintiff,**

v.

**DUNKIRK RADIATOR CORPORATION, Defendant.**

No. CIV–89–61S.

United States District Court, W.D. New York.

Nov. 13, 1991.

Jack A. Wheat, Louisville, Ky., Daniel C. Oliverio, Buffalo, N.Y., for plaintiff.

Donald H. Michalak, Fredonia, N.Y., for defendant.

### DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Now before this Court is the motion of the defendant Dunkirk Radiator Corporation ("defendant") for summary judgment pursuant to Fed.R.Civ.P. 56.

The plaintiff Ronald G. Jones ("plaintiff") has filed a one count Complaint alleging wrongful discharge stemming from breach of contract.

This Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. New York law applies to this case.

This lawsuit stems from a business venture ("the venture") undertaken between the plaintiff, defendant and a third person, not a party to this lawsuit, Larry Burkhart ("Burkhart"). In 1985, plaintiff and Burkhart entered into a relationship with the defendant to develop, manufacture and supply a special heat pump previously unavailable on the market. Under their arrangement plaintiff and Burkhart were chiefly responsible for the product's design and marketing while the defendant would be the initial source of capital infusion. On December 17, 1985, in furtherance of the venture, plaintiff, Burkhart and the defendant executed a document entitled Basic Memorandum Agreement ("the Memorandum Agreement"). Generally, under the terms of the Memorandum Agreement, plaintiff and Burkhart agreed to become employees of defendant at an annual salary, the defendant agreed to "... expend a minimum of $150,000.00 ..." on the venture and all parties agreed that "[a]t such time as annual sales volume for the product reaches a level of $1,800,000.00 ...[,]" the parties would form a partnership with capital subscriptions by each. In 1988, however, after plaintiff and Burkhart became employees of the defendant, after the defendant had spent more than $150,000.00 on the venture, but before annual sales had reached the 1.8 million level, the defendant terminated the Memorandum Agreement, effectively ending the defendant's employment relationship with the plaintiff.

Subsequently, plaintiff commenced this lawsuit, alleging wrongful discharge stemming from defendant's breach of contract. The plaintiff seeks compensation for the period from his discharge to the date on which the defendant ceased selling the product line, January 22, 1988 to March 20, 1989.

Moving for summary judgment, the defendant contends that, pursuant to the Memorandum Agreement, once it expended $150,000.00 on the venture, the plaintiff became an at will employee, under New York law terminable for any reason at any time. Opposing the defendant's motion, the plaintiff argues that under the entirety of the agreement which he had with the defendant, he was not an at will employee.

In support of its motion, the defendant has filed a legal memorandum ("d. memo."), a reply memorandum ("d. reply"); the affidavit of the defendant's president, Thomas Reed ("Reed"); various exhibits ("d. exh."); and a statement of facts not in dispute ("d. fact").

In opposition to the defendant's motion, the plaintiff has filed a legal memorandum ("p. memo."); the deposition transcripts with exhibits of Ronald G. Jones ("Jones Deposition"), Thomas E. Reed ("Reed Deposition"), Harry A. Hebberd ("Hebberd Deposition") and George T. Underhill III; and a statement of facts in dispute ("p. fact").

*Conclusion:* For the reasons set forth below, this Court denies the defendant's motion for summary judgment.

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed.R.Civ.P. 56(e). Once that burden is met, the non-moving party "... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

The function of the district court in considering a summary judgment motion is not to resolve disputed issues of fact but only to determine whether there is a genuine

issue to be tried. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991).

Applying this standard to this case, this Court must deny the defendant's motion.

## FACTS

The following material facts are not in dispute.

On December 17, 1985, the plaintiff, defendant and Burkhart executed the Memorandum Agreement. (d. exh. A).

Paragraph 1 of the Memorandum Agreement provides:

> On January 6, 1986 Jones and Burkhart will become employees of Dunkirk at an annual salary rate of $40,000.00 to be paid bi-weekly. They will receive the same fringe benefits as other management employees of Dunkirk. When unit shipments reach 1,000 units, the annual salaries shall increase to $60,000.00 paid in the same method as above.

Paragraph 2 of the Memorandum Agreement provides:

> Jones and Burkhart will devote full time to the development and marketing of the product and Dunkirk will expend a minimum of $150,000.00, including total compensation paid under [paragraph] 1. hereof in such development and marketing.

Paragraph 3 of the Memorandum Agreement provides:

> At such time as annual sales volume for the product reaches a level of $1,800.000.00, the parties shall form a partnership (herein referred to as the Rep) with capital of $10,000.00 to be subscribed—$5,000.00 by Dunkirk and $2,500.00 each by Jones and Burkhart. All partnership decisions shall be made by the partners with Dunkirk having a full vote and Jones and Burkhart each having one-half vote.

By letter dated February 11, 1988, defendant, by its president Reed, terminated plaintiff's employment by cancelling the Memorandum Agreement, effective January 22, 1988. (p. exh. B).

Before January 22, 1988: the defendant expended at least $150,000.00 on the venture (Reed ¶ 8; d. exh. J); the venture had not reached 1.8 million in annual sales (Reed, ¶ 12; d. exh. q); the partnership was never formed (Reed, ¶ 12); and the plaintiff made no financial investment in the venture (Jones Deposition, p. 63).

On March 20, 1989, the product line was sold to a third party (d. exh. O).

## DISCUSSION

### The Plaintiff's Employment Contract

The defendant argues that based on the plain language of the Memorandum Agreement it is entitled to summary judgment. Specifically, defendant argues that pursuant to paragraphs 1 and 2, it was bound to employ the plaintiff only until it expended $150,000.00. Once defendant spent that sum, and it remains undisputed that defendant did so before January 22, 1988, the date of plaintiff's discharge, the defendant contends that the plaintiff's employment became one at will, which under New York common law is terminable at any time for any reason absent an express agreement providing that the plaintiff's employment is to be of fixed duration. The defendant argues that no agreement exists which limits its unfettered right to terminate plaintiff once plaintiff's employment became one at will. (d. memo., pp. 5–6).

The plaintiff admits that pursuant to the Memorandum Agreement he became an employee of the Defendant on or about January 5, 1986. (p. fact, ¶ 2). Plaintiff argues that pursuant to the "totality" of their agreement, plaintiff, defendant and Burkhart jointly owned the venture and, although by virtue of the Memorandum Agreement they agreed to temporarily characterize the venture as an employment relationship for tax purposes, once the venture became profitable the venture would be "spun off" from the defendant and into the partnership where plaintiff would have a partnership interest. (p. memo., pp. 6, 15–18). However, at oral argument and in his legal memorandum, the plaintiff appears to concede that, pursuant to the Memorandum Agreement, until the formation of the partnership occurred he was an employee of

the defendant and under New York law an employment relationship is presumed to be one at will absent an agreement that it is to be of a fixed duration. (p. memo., p. 17). The plaintiff argues that his employment term was of fixed duration and that the defendant orally agreed that the plaintiff's employment was not terminable at will.

### 1. *The New York Employment At Will Rule*

■ New York law unequivocally dictates that, "... absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920 (1987) (citation omitted). New York courts have narrowly construed limits on an employer's right to discharge an at will employee for any reason; "... absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983).

The plaintiff cites *Weiner v. McGraw–Hill,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), in support of his position that he is not terminable at will.

In *Weiner* the New York Court of Appeals, reversing the dismissal below, held, despite the fact that an employee was hired for an indefinite term, that the employee stated a cause of action for wrongful discharge predicated on an alleged breach of an express employment contract where the employee presented sufficient evidence of an express contractual limitation proscribing the employer's unfettered right to discharge for any reason. The Court concluded that language in an employment hand-

book combined with reference to the handbook in an employment application constituted sufficient evidence of an express contract limiting the employer's otherwise "unfettered right" to discharge the employee. The Court identified four factors, alleged by the employee, from which a jury could infer the existence of an express contractual limit on the employer's right to discharge. First, the employee alleged that the employer induced the employee to leave his former employer by assurances of job security. Second, the employee alleged that these assurances were incorporated into an employment contract, application or other document. Third, the employee alleged that he rejected other offers of employment in reliance on these assurances. And fourth, the employee alleged that the employer informed him that he could be discharged only for cause. *Id.,* 57 N.Y.2d at 465–466, 457 N.Y.S.2d at 197, 443 N.E.2d at 445.

These are not the only factors which might indicate the existence of a limitation on an employer's right to discharge an otherwise at will employee; federal courts in this Circuit have weighed the totality of the circumstances to determine the existence of a contractual right limiting the employer's right to discharge under New York law. *See Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 853 (2d Cir.1985); *Gmora v. State Farm Mutual Automobile Insurance Company,* 709 F.Supp. 337, 340 (E.D.N.Y.1989) *aff'd,* 888 F.2d 1376 (2d Cir. 1989).

However, since *Weiner,* to avoid entry of judgment for the employer, the New York Court of Appeals has observed that an employee must sustain an "... explicit and difficult pleading burden," *Sabetay,* 69 N.Y.2d at 334–335, 514 N.Y.S.2d at 212, 506 N.E.2d at 922, by showing the existence of a contractual limitation on an employer's right to discharge an employee at will. *Murphy,* 58 N.Y.2d at 305, 461 N.Y.S.2d at 237, 448 N.E.2d at 91 (1983).[1] In *Murphy*

---

**1.** Since *Weiner,* several courts have addressed the issue of whether an implied agreement, as opposed to an express one, can limit an employer's right to discharge at will. Although some authority exists that an implied agreement may

limit the employer's right, *see Dicocco v. Capital Area Community Health Plan,* 135 A.D.2d 308, 525 N.Y.S.2d 417 (3d Dept.1988), the weight of authority finds that an agreement must be express. *See, e.g., Novinger v. Eden Park Health*

and *Sabetay,* decided after *Weiner,* the New York Court of Appeals, finding that an employee failed to state a claim for wrongful discharge because the employee could not establish an express agreement limiting the employer's right to discharge at will, affirmed dismissal of the employee's wrongful discharge claim.

Therefore, unless this Court finds sufficient evidence of an express contractual right limiting defendant's otherwise unfettered right to discharge plaintiff, this Court must grant the defendant summary judgment.

### A. Plaintiff's Evidence Of A Contractual Limitation On The Defendant's Right To Discharge Him At Will

Plaintiff offers this Court evidence of two agreements between the parties: 1) the Memorandum Agreement which, according to the plaintiff, is only a partially integrated agreement between the parties generally evidencing that the "temporary" structure of the venture, in the beginning, was an employment relationship; and 2) an oral agreement between the plaintiff and the defendant's president, part of the "total" agreement between the parties, which provides that plaintiff would not be required to relocate his home from Indiana to New York. This Court will examine each to determine whether either alone, or read together, places a limit on the defendant's right to discharge the plaintiff at will.

### (i) *The Memorandum Agreement*

■ This Court concludes that the Memorandum Agreement in no way limits the defendant's right to discharge the plaintiff. The plain language of the Memorandum Agreement cannot reasonably be construed to place a fixed duration on the plaintiff's employment or otherwise to limit the defen-

*Services, Inc.,* 167 A.D.2d 590, 563 N.Y.S.2d 219, 220 (3d Dept. 1990), *appeal denied,* 77 N.Y.2d 810, 571 N.Y.S.2d 913, 575 N.E.2d 399 (1991) ("'... only an express limitation relied on by an employee will create a cause of action for breach of an employment contract.'") (quoting *Marvin v. Kent Nursing Home,* 153 A.D.2d 553, 544 N.Y.S.2d 210, 211 (2d Dept.1989)); *Townsend v. Harrison Radiator Div.,* 760 F.Supp. 286,

dant's right to discharge the plaintiff at will.

In support of his argument that by virtue of the overall "... structure of the deal ..." the term of his employment was "ascertainable" from the Memorandum Agreement and therefore he cannot be considered to be an at will employee, plaintiff argues that paragraph 3 of the Memorandum Agreement demonstrates that plaintiff was to continue as an employee "... until sales reached the 1.8 million milestone." (p. memo., p. 20; Jones Deposition p. 52).

In construing the language of the Memorandum Agreement, this Court consults some basic principles of contract interpretation.

In *Roberts v. Consolidated Rail Corp.,* 893 F.2d 21, 24 (2d Cir.1989), the Second Circuit thoroughly discussed rules of contract interpretation under New York law which apply in this case. The Court said:

> Absent an ambiguity in a written contract, courts will not look to the underlying intent of the parties in executing the contract. *See American Home Products Corp. v. Liberty Mutual Insurance Co.,* 748 F.2d 760, 765 (2d Cir.1984) (applying New York law). A provision is ambiguous where a natural and reasonable reading of its language allows for two or more possible meanings. *See Kemelhor v. Penthouse Int'l, Ltd.,* 689 F.Supp. 205, 212 (S.D.N.Y.1988), *aff'd,* 873 F.2d 1435 (2d Cir.1989).

Moreover, as the Southern District observed, "[a] contract will not be held to be ambiguous merely because the parties ascribe varying meanings to a specific provision." *Kemelhor,* 689 F.Supp. at 212 (citation omitted).

As noted above, Paragraph 3 of the Memorandum Agreement states:

292 (W.D.N.Y.1990) ("... the *Weiner* reasoning has not been extended by the New York Court of Appeals to embrace an *implied* contractual limitation on an employer's right to discharge an employee at will....") (and citations therein) (emphasis in original).

In this case, the plaintiff alleges that the agreements at issue are express.

At such time as annual sales volume for the product reaches a level of $1,800,-000.00, the parties shall form a partnership (herein referred to as the Rep) with capital of $10,000.00 to be subscribed— $5,000.00 by Dunkirk and $2,500.00 each by Jones and Burkhart. . . .

Although the plaintiff concedes that this court should strictly construe the terms of the Memorandum Agreement, (p. memo., p. 22), plaintiff's interpretation of paragraph 3 is not evident from that provision's plain and unambiguous language. Therefore, this Court rejects the plaintiff's argument. Read alone or together with the rest of the Memorandum Agreement and even along with the alleged oral relocation agreement, discussed below, this clause, contrary to plaintiff's interpretation, does not place any limit on the defendant's right to discharge the plaintiff. Paragraph 3 on its face simply places a contingency on the initiation of the spin off venture, i.e. the parties "shall form" a partnership "at such time" as annual sales reach 1.8 million.

In fact, upon this Court's clarification at oral argument, the plaintiff conceded that the Memorandum Agreement really does not contain language limiting the term of his employment and that instead plaintiff relies on the alleged relocation agreement as the source limiting the defendant's right to discharge him at will.

### (ii) *The Alleged Oral Relocation Agreement*

■ In its motion, the defendant disputes that any other agreements exist beside the Memorandum Agreement which evidence any employment rights which the plaintiff might have. The defendant produces an affidavit by the defendant's president to this effect. (Reed, ¶ 16).

However, the plaintiff contends that as part of the structure of the venture, the defendant agreed that the plaintiff need not relocate his home from Indiana to New York (hereinafter the "oral agreement") (p. memo., pp. 9–11; Jones Deposition, p. 61).

As legal support for his argument that his employment was not terminable at will by virtue of the alleged oral agreement, the plaintiff relies on the following passage from *Weiner:*

. . . an agreement on the part of an employer not to dismiss an employee except for 'good and sufficient cause only' . . . does not create an ineluctable employment at will.

*Id.,* 57 N.Y.2d at 465, 457 N.Y.S.2d at 197, 443 N.E.2d at 445. Plaintiff translates this quote from *Weiner* to mean generally that an employment ". . . is not terminable at will..[i]f the attempted termination is contrary to any terms of the agreement between the parties." (p. memo., p. 17). Plaintiff then argues that the defendant's discharge of the plaintiff because the plaintiff would not relocate to New York breached the oral agreement. (p. memo., pp. 13–16). At minimum, the plaintiff argues, this Court must deny the defendant's motion because a question of fact remains as to the existence of the oral agreement.

■ Contrary to the plaintiff's interpretation of *Weiner,* neither *Weiner* nor its progeny state, much less hold, that an at will employment is not terminable when the termination is contrary to any agreement between the parties. To limit the employer's right to discharge an at will employee, there must exist an agreement which places a limit on the employer's specific well recognized right to discharge the employee for any reason—within constitutional and otherwise permissible bounds.

An inventory of the employee's allegations in *Weiner* prompting the New York Court of Appeals' holding that the employee in that case stated a cause of action for wrongful discharge—despite the employment's indefinite duration—demonstrates that the Court narrowly tailored a specific exception to the employee at will rule under the facts of that case. The exception responded to the employer's agreement, and the employee's reliance thereon, that the employee could only be discharged for cause.

Initially, in this case, this Court finds a factual dispute exists as to whether the parties made the oral agreement. One need only briefly compare plaintiff's deposition (at p. 61) to Reed's deposition (at pp.

69–72) and the parties' legal memoranda and evidentiary citations therein to conclude that the parties are diametrically opposed on this issue.

A more difficult question is whether, assuming such agreement exists, it limits the defendant's right to discharge the plaintiff at will. The oral agreement, as plaintiff alleges it, does not limit the defendant's right to discharge to just and sufficient cause only. *See Dickstein v. Del Laboratories, Inc.*, 145 A.D.2d 408, 535 N.Y.S.2d 92 (2d Dept.1988), *appeal denied*, 73 N.Y.2d 709, 540 N.Y.S.2d 1004, 538 N.E.2d 356 (1989) (fact that employer's personnel policy listed twelve reasons for an employee's dismissal did not limit the employer's right to discharge to just and sufficient cause only.)

In this case, the plaintiff argues that the oral agreement limits the defendant's right to discharge him at will because the defendant could not discharge him for refusing to relocate to New York according to that agreement. However, the defendant argues that even assuming, *arguendo*, that the oral agreement between the parties exists, the defendant's discharge of plaintiff stemmed from reasons besides the plaintiff's refusal to relocate to New York. The defendant, then, does not dispute that the oral agreement, if it exists, places a limit on the defendant's right to discharge the plaintiff at will, but only insofar as the oral agreement's terms expressly provide. The defendant apparently argues that under New York law, because the plaintiff's employment is presumed to be at will, and therefore despite the oral agreement, it could discharge the plaintiff for any reason (or no reason) except for that reason prohibited by the alleged oral agreement, namely the refusal to relocate.

This Court agrees. If the oral agreement is found to exist, it would place a limit on the defendant's right to discharge the plaintiff at will to the extent that the defendant would be prohibited from discharging the plaintiff solely for refusing to relocate to New York.

This Court concludes, however, that an issue of fact exists as to whether the plaintiff's refusal to relocate to New York was the sole reason for his discharge.

The defendant argues that the plaintiff's refusal to relocate was one "... of several reasons ..." and "... a major reason" for the plaintiff's discharge. (Reed Deposition, p. 69). The defendant contends that the plaintiff was discharged as a result of its decision to terminate the venture for numerous business reasons besides the plaintiff's refusal to relocate, including the venture's disappointing profitability, sales volume and higher than expected cost. (defendant's exh. V, Response To Request for admission No. 7).

The plaintiff, on the other hand, contends that the defendant discharged him solely because he would not relocate to New York. (plaintiff memo., p. 14). In support of this argument, the plaintiff offers the deposition testimony of Harry Hebberd, who served as a management consultant of the defendant at the time of the plaintiff's discharge. Hebberd testified that his "understanding" was that plaintiff's discharge resulted from the plaintiff's refusal to relocate to New York. Although Hebberd testified that he came to understand this fact from Reed, Hebberd also testified that he had no specific conversation or formal meeting with Reed on the subject. (Hebberd Deposition, p. 70). Furthermore, although the defendant's Response To Request For Admission No. 7 (defendant's exh. V) indicates that the venture was suffering financially, Hebberd testified that at about the time of the plaintiff's discharge, the venture had begun to show signs of success and that based on these signs, he recommended its continuation. (Hebberd Deposition, pp. 74–75). This Court notes that evidence submitted by the plaintiff shows that approximately six months after the plaintiff's discharge, the one thousandth heat pump was sold which, according to the Memorandum Agreement, would have triggered a salary raise for the plaintiff. (Reed Deposition, exh. 17).

Admittedly, this Court acknowledges that Reed's deposition testimony combined with the defendant's exhibit V is evidence in support of the defendant's position that

the discharge of the plaintiff was made simply in connection with the defendant's valid business judgment and not solely for the plaintiff's refusal to relocate to New York. However, viewing the evidence most favorable to the plaintiff, as this Court must for purposes of this motion, in light of Hebberd's testimony, this Court is troubled by the prospect of precluding the plaintiff from presenting its case to the trier of fact, which can make proper credibility determinations and assign weight to the contradictory evidence presented on the relocation issue.

If, at the conclusion of the presentation of all of the evidence in this case, the trier of fact concludes that the defendant discharged the plaintiff not solely because the plaintiff refused to relocate, his discharge would be proper under New York law. Moreover, assuming credible evidence also establishes the existence of the alleged oral agreement, and the plaintiff is able to show that the defendant breached the oral agreement, the plaintiff still must demonstrate what damages, if any, were proximately caused by a breach of the oral agreement.

Therefore, this Court finds a question of fact as to whether the oral agreement exists and, if it exists, whether the defendant's discharge of the plaintiff stemmed solely from the plaintiff's refusal to relocate to New York.

## CONCLUSION

For the reasons set forth above, this Court denies the defendant's motion for summary judgment.