**Ronald G. JONES, Petitioner–Appellant–Cross–Appellee,**

v.

**DUNKIRK RADIATOR CORPORATION, Defendant–Appellee–Cross–Appellant.**

Nos. 1075, 1076, Dockets 93–7955, –7979.

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1994.

Decided April 12, 1994.

Jack A. Wheat, Louisville, KY (Roach & Wheat, of Counsel), for plaintiff-appellant-cross-appellee.

Donald H. Michalak, Fredonia, NY, for defendant-appellee-cross-appellant.

Before: FEINBERG, OAKES and KEARSE, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Ronald G. Jones appeals from a judgment in the United States District Court for the Western District of New York, William M. Skretny, J., awarding Jones one dollar in nominal damages in his suit for wrongful discharge against his former employer, defendant Dunkirk Radiator Corporation (Dunkirk). The judgment was entered after a jury found that Dunkirk had breached an agreement not to require Jones to relocate from Indiana to New York. The parties stipulated to the one dollar figure because the jury also found that Jones's refusal to relocate was not the "one and only reason" for the discharge, and the district court had earlier held that under New York law Jones was employed at-will and could recover for wrongful discharge only on a showing that his refusal to relocate was the "sole reason" for his discharge. *Jones v. Dunkirk Radiator Corp.*, 778 F.Supp. 108 (W.D.N.Y.1991).

This diversity case requires us to examine New York employment-at-will doctrine and the standard of causation applicable in wrongful discharge cases in which express contractual terms limit the employer's right to discharge. Appellant also raises two evidentiary issues. We hold that the district court misapplied New York's employment-at-will doctrine and also used the wrong standard of causation. Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.

## I. Background

### A. The Joint Venture

This case grows out of a joint venture entered into by plaintiff Jones, defendant Dunkirk and a third person not a party to this suit. Jones was a product manager for an industrial supply company and determined that there was an untapped market for certain specialized heat pump and air conditioning equipment. He explored the possibility of developing such equipment with another employee, Larry Burkhart, of the same company. The two budding entrepreneurs then considered resigning from their salaried positions to form their own company to develop and market the equipment.

Jones contacted Dunkirk, with whom he had previously done business, in hopes of identifying a potential supplier of sheet metal. During these discussions, Dunkirk's President, Thomas Reed, became interested in having Dunkirk take a larger role in the new business. Reed ultimately decided to bring Dunkirk into the venture.

In 1985, Jones, Burkhart and Dunkirk agreed to enter into a joint venture to develop, manufacture and supply heat pumps and air conditioners. In December 1985, the parties executed a written document entitled "Basic Memorandum Agreement" (Memorandum Agreement or Agreement). The venture was structured in an unusual manner: Because it was not expected to become profitable at first, and because only Dunkirk was in a position to take full advantage of the initial losses for tax purposes, the parties agreed that at first—but only temporarily—the business would be wholly owned by Dunkirk. Jones and Burkhart were to be salaried employees of Dunkirk until the venture generated annual sales of $1.8 million, at which time it would be spun off into a partnership of Jones, Burkhart and Dunkirk, with each owning a specified but shifting share of the enterprise. Dunkirk's ownership share would decrease—and the shares attributable to Jones and Burkhart would increase—as annual sales reached stated levels. If all went well, the latter two partners would eventually own 90% of the business.

The Memorandum Agreement also required Dunkirk to invest at least $150,000 in the venture, apparently to show Dunkirk's commitment, since Jones and Burkhart were required to resign from their current employment.

Jones claims that, in addition to the written Memorandum Agreement, it was orally agreed that Jones, whose job was to organize the marketing network, would not be required to relocate to Dunkirk's headquarters in New York State. That is, sales would be run out of Indianapolis, Jones's home town where he was then living. Burkhart, however, agreed to move to New York, and did so.

Jones and Burkhart became employees of Dunkirk in January 1986. Research and development on the new project began at approximately the same time, and sales commenced in 1987. However, as of the end of 1987 not all of the models had been developed, and the venture was not yet profitable. Unhappy with the progress, Dunkirk attempted to restructure the arrangement. Dunkirk was particularly concerned about Jones's and Burkhart's compensation, which was tied to sales volume, because most of the sales were in the less profitable product lines. Also, prices were lower than originally projected, further reducing profit margins.

In December 1987, Dunkirk met with Jones to discuss restructuring the arrangement. At the same time, Dunkirk discussed with Jones its desire that he relocate to New York. Jones indicated that he would not uproot himself and his family. Thereafter, Dunkirk terminated Jones's employment by cancelling the Memorandum Agreement, effective in late January 1988. Some 14 months later, in March 1989, Dunkirk sold the product line and abandoned the venture, having never achieved the $1.8 million threshold for spinning it off into a partnership under the Memorandum Agreement.

## B. Proceedings in the District Court

In January 1989, Jones commenced this action seeking damages for the alleged wrongful discharge stemming from breach of an employment contract and from loss of the prospective partnership interest. After Dunkirk sold the venture, Jones voluntarily dismissed the latter damage claim as moot.

Jones contended that, under the Memorandum Agreement, he was not an at-will employee subject to Dunkirk's unfettered right of discharge, and that Dunkirk breached the Agreement by discharging him while continuing the venture. Jones further argued that even if the Memorandum Agreement did not constrain Dunkirk's right of discharge, Dunkirk breached an oral agreement not to require Jones to relocate by discharging him for refusing to do so. Jones sought damages measured by what his compensation would have been for the period between his discharge and Dunkirk's sale of the business, that is, from January 1988 to March 1989.

Dunkirk moved for summary judgment, arguing that Jones was an at-will employee under the Memorandum Agreement and denying the existence of an oral agreement concerning relocation.

In November 1991, the district court denied Dunkirk's motion for summary judgment, although it agreed with Dunkirk on the first issue. The judge held that the Memorandum Agreement did not establish an ascertainable term of employment, and that Jones as a matter of law was therefore an at-will employee subject to discharge at any time. However, the district court also found that whether Dunkirk had breached an "oral relocation agreement" was a triable question of fact. 778 F.Supp. at 113–14. The court further held that, to prove wrongful discharge based on the oral relocation agreement, Jones would have to prove both the existence of such an agreement and that Dunkirk's discharge of Jones stemmed "solely" from Jones's refusal to relocate. Id. at 114.

In May 1992, the district court held the liability portion of a bifurcated trial. The judge submitted to the jury a special verdict form tailored along the lines of his summary judgment opinion. The jury found that there was an oral agreement that Jones would not have to relocate and that Dunkirk had breached that agreement.[1] However, the

---

1. The special verdict contained the following     questions and answers:

jury also found that Jones's refusal to relocate was not "the one and only" reason for Dunkirk's dismissal of Jones, and that Dunkirk also had "business reasons" for the discharge. Thus, because of the district court's prior ruling on causation, Jones had established a breach of contract but not a wrongful discharge. To expedite his appeal, Jones stipulated to entry of judgment for one dollar in nominal damages in lieu of a further trial on damages.

## II. Discussion

In this court, Jones challenges (1) the district court's conclusion that Jones was an at-will employee; and (2) the court's instruction to the jury on the standard of causation applicable to the relocation issue. We believe that the district court erred on both issues, and that a new trial is required.

## A. The Memorandum Agreement and the Employment–At–Will Rule

The district court held that the Memorandum Agreement "in no way" limited Dunkirk's right to discharge Jones because it did not establish a fixed duration or an ascertainable term of employment. 778 F.Supp. at 112. Thus, the district court believed that once Dunkirk had invested the minimum of $150,000, as required by the Memorandum Agreement, it had the right to discharge Jones at any time, for any reason or no reason, under New York's employment-at-will doctrine. Jones contends that this was error because the at-will rule does not apply to employment contracts of a stated or ascertainable duration. Jones argues that the Memorandum Agreement was such a contract, because it established an ascertainable term measured by either of two events: (1) achievement of the $1.8 million in sales, at which time Jones would become a partner; or (2) a decision by Dunkirk to abandon the venture. According to Jones, while Dunkirk was free to abandon the venture any time after investing the minimum of $150,000, Dunkirk was not free to discharge Jones unless it did abandon the venture, which actually happened about 14 months after his discharge.

Dunkirk argues that Jones has waived this argument, and points to the district court's observation in its opinion that "upon this Court's clarification at oral argument, the plaintiff conceded that the Memorandum Agreement really does not contain language limiting the term of his employment and that instead plaintiff relies on the alleged relocation agreement as the source limiting the defendant's right to discharge him at will." 778 F.Supp. at 113. After reviewing the record before us, we do not believe that Jones is barred from pressing the argument on appeal that there was an ascertainable term of employment. The issue was vigorously joined in the district court, which decided the question squarely on the merits after a thorough analysis. The court's brief observation quoted above came at the end of a lengthy discussion of the issue in its opinion, and the statements of Jones's counsel at oral argument in the district court were, taken as a whole, ambiguous. Further, both parties have briefed the issue in this court. Accordingly, we turn to consideration of the issue on the merits.

Under New York's employment-at-will doctrine, an employer has a nearly unfettered right to discharge an employee. *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 448

---

1. Has the plaintiff (Ronald Jones) proven to you by a preponderance of the evidence that an oral agreement [or contract] was made that plaintiff (Ronald Jones) would never be required to relocate from Indiana to New York?
   Answer: Yes.
2. If you answered Yes to Question 1, has the plaintiff (Ronald Jones) proven to you by a preponderance of the evidence that defendant (Dunkirk Radiator Corporation) breached that oral agreement [or contract]?
   Answer: Yes.

3. a.) Has the plaintiff (Ronald Jones) proven to you by a preponderance of the evidence that the one and only reason for his discharge was his refusal to relocate from Indiana to New York?
   Answer: No.
   b.) Do you find that the defendant (Dunkirk Radiator Corporation) discharged plaintiff (Ronald Jones) for business reasons, in addition to or other than, his refusing to relocate?
   Answer: Yes.

N.E.2d 86 (1983) (noting that "under New York law as it now stands, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired"). However, the New York Court of Appeals has also recognized that the at-will rule is no more than "a rebuttable presumption." *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 466, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). The court in *Weiner* went on to note that "[i]n determining whether such a presumption is overcome ..., the *trier of the facts* will have to consider" the totality of the circumstances, including the writings, the situation, the course of conduct of the parties and their objectives. Id. at 466–67, 457 N.Y.S.2d 193, 443 N.E.2d 441 (emphasis added); see also *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 852–53 (2d Cir.1985); *Tiranno v. Sears, Roebuck & Co.,* 99 A.D.2d 675, 472 N.Y.S.2d 49, 50 (4th Dep't 1984) (finding that whether a writing abrogated the at-will presumption was a "triable issue of fact"). In addition, the at-will presumption applies only to employment of indefinite duration. *Sabetay,* 69 N.Y.2d at 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 ("absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will"); *Weiner,* 57 N.Y.2d at 465, 457 N.Y.S.2d 193, 443 N.E.2d 441 (noting that a promise of employment for a period of time that is "either definite or capable of being determined" trumps the at-will presumption). A contract of employment for a term can be terminated prior to the end of the term only for just cause. *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1020–21 (2d Cir. 1985); *Alpern v. Hurwitz,* 644 F.2d 943, 945 (2d Cir.1981); *Crane v. Perfect Film & Chemical Corp.,* 38 A.D.2d 288, 329 N.Y.S.2d 32, 34 (1st Dep't 1972).

■ The meaning of an ambiguous agreement is a triable issue of fact, and a court should deny summary judgment in that situation. *Mycak v. Honeywell, Inc.,* 953 F.2d 798, 802 (2d Cir.1992) (summary judgment proper only when contract is unambiguous); *Record Club of America, Inc. v. United Artists Records, Inc.,* 890 F.2d 1264, 1270–71 (2d Cir.1989); *Rothenberg,* 755 F.2d at 1019–20 (meaning of an employment contract susceptible to two interpretations was a question for the jury). We believe that the Memorandum Agreement was ambiguous with respect to Jones's employment status.

■ It is undisputed that the parties intended to enter into a new venture, that the venture was eventually to be a partnership with ownership shares tied to sales volume, and that the employer-employee relationship was to be a temporary interim structure until the venture reached the $1.8 million threshold, designed largely to allow Dunkirk to take advantage for tax purposes of the initial losses. It is further undisputed that Jones gave up steady employment to pursue the venture in reliance on Dunkirk's commitment to develop the business. From the record before us, we believe that a reasonable trier of fact could find that the Memorandum Agreement constituted an employment contract of an ascertainable term measured by either achievement of the $1.8 million threshold to spin-off the venture or Dunkirk's decision to abandon the project any time after expending the $150,000 required under the Agreement. In other words, a reasonable trier of fact could have found (although it was not required to find) that Dunkirk did not have the unfettered right to discharge Jones while the project continued, and that Jones is therefore entitled to damages for wrongful discharge measured by the salary he would have received from the time of his discharge until Dunkirk's sale of the business, less any mitigation. *Ohanian v. Avis Rent A Car System, Inc.,* 779 F.2d 101, 110 (2d Cir.1985) (measuring contract damages for wrongful discharge by the amount employee would have received through natural end of term of employment minus earnings from other employment); *Cornell v. T.V. Development Corp.,* 17 N.Y.2d 69, 74, 268 N.Y.S.2d 29, 215 N.E.2d 349 (1966).

This reading of the Memorandum Agreement is at least as plausible as the district court's interpretation that the Agreement, as a matter of law, could not "reasonably be construed to place a fixed duration on the plaintiff's employment or otherwise to limit

the defendant's right to discharge the plaintiff at will." 778 F.Supp. at 112. Therefore, we believe that it was error to find that the Agreement was unambiguous. *Roberts v. Consolidated Rail Corp.*, 893 F.2d 21, 24 (2d Cir.1989) (noting that "[a] provision is ambiguous where a natural and reasonable reading of its language allows for two or more possible meanings").

Because we believe that Jones was entitled to have a jury decide the issue whether the Memorandum Agreement had the ascertainable term of duration he attributes to it, the district court's grant of partial summary judgment on that issue was improper.

## B. The Standard of Causation

■ Jones also claims, as a separate matter, that he is entitled to substantial damages based upon his right of refusal to relocate. On this phase of the case, Jones's argument is that since he exacted from Dunkirk a promise that he would not be relocated against his will, then he could not be discharged for refusing to relocate. The district court agreed with this analysis. 778 F.Supp. at 114. Where the district court erred, in Jones's view, was in telling the jury that, to prove wrongful discharge based on the oral relocation agreement, Jones had to prove that his refusal to relocate was the "one and only reason" for his discharge. Jones argues that this was the wrong test of causation and that under the proper test the jury would have found in his favor.

Jones contends that he should prevail if he can show that his refusal to relocate was the determinative or controlling factor of his discharge; that is, that Dunkirk would not have discharged Jones "but for" his refusal to relocate. Dunkirk argues that the district court applied the proper standard of causation, and that even if—as the jury found—Dunkirk breached an oral relocation clause, there were other reasons for Dunkirk's decision to discharge Jones. Neither party has identified a New York case directly dispositive of the narrow issue of the standard of causation applicable to wrongful discharge claims based on contractual limitations on the employer's right to discharge. Nor did the district court cite any such authority.

At trial, there was evidence to support both the view that Dunkirk discharged Jones because he refused to relocate and the view that there were other reasons for the discharge. For example, Reed stated in a taped conversation that the relocation issue was the "primary" reason for the discharge, and testified at trial that, had Jones agreed to relocate, he probably would not have been discharged "[a]t that particular time." On the other hand, there was also evidence that Dunkirk was concerned about Jones's performance. Therefore, a properly instructed jury could have decided either way.

In this situation, we believe that the district court erred in instructing the jury to use the standard of "one and only" or "sole" cause. This formulation was both confusing and unfair to the plaintiff. It was confusing because it implies that if Dunkirk had any other reasons to discharge Jones, he should not recover. But this is unfair since the other reasons might not have been sufficient to cause Jones's discharge, and the jury's verdict did not clearly resolve that issue. The judge should have applied the determinative factor or "but for" standard of causation. Under that standard, Jones would have been required to convince the jury only that the discharge would not have taken place but for his refusal to relocate. Cf. 2 Henry H. Perritt, Jr., Employee Dismissal Law and Practice § 7.27 (3d ed. 1992) (noting that when "the prohibited reason played some role in the dismissal but [the employer] argues that legitimate reasons were more important, the determining factor standard is the appropriate rule of thumb. If the prohibited reason was a determining factor in the termination decision, the plaintiff has established the necessary causation.").

In sum, there was evidence to support the view that Jones's refusal to relocate was the determinative or "but for" factor in his discharge. The jury was not properly instructed on this issue, and a new trial is therefore necessary.

## C. Evidentiary Issues

Finally, Jones challenges two of the district court's evidentiary rulings: the district

court's refusal to allow him to recall Reed to rebut testimony that Jones's refusal to re-structure the deal may have been a motive for the discharge; and the district court's denial of Jones's request to admit the deposition testimony of one of Jones's advisers, who had assisted in structuring the arrangement. The district court ruled that Reed's testimony could have been elicited on direct or cross-examination, and that most of the deposition testimony was cumulative. In the context of a complete new trial, the order and nature of proof may not be the same as at the previous trial, and we believe it would be premature to rule on these evidentiary issues at this time.

### Conclusion

For these reasons, we reverse the judgment of the district court and remand the case for a new trial to determine whether Jones was wrongfully discharged either because: (1) under the "totality of the circumstances," the Memorandum Agreement was an employment contract that Dunkirk violated in discharging Jones while continuing the venture; or (2) the discharge was a breach of an oral agreement that Jones would not be required to relocate, and his refusal to do so was the determinative or "but for" reason for the discharge.

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.[2]

---

2. Dunkirk has designated itself a cross-appellant in all of its submissions to this court. It is not apparent what arguments Dunkirk makes as cross-appellant in addition to those that it makes as defendant-appellee. In any event, we have considered all of Dunkirk's arguments in deciding to reverse and remand, as indicated above.