**Peter X. McCARTHY, Plaintiff,**

v.

**BOARD OF TRUSTEES OF ERIE COMMUNITY COLLEGE; and County of Erie; and Louis J. Ricci, Individually and as President of Erie Community College; and Sharon M. West, Individually and as Chair of Erie Community College Board of Trustees; and Louis J. Fasolino, Individually and as Vice–Chair of Erie Community College Board of Trustees; and Joseph D. Divincenzo, Individually and as Trustee of Erie Community College Board of Trustees; and John A. Michalek, Individually and as Trustee of Erie Community College Board of Trustees, and E. Jeannette Ogden, Individually and as Trustee of Erie Community College Board of Trustees, Defendants.**

No. 94–CV–616C(F).

United States District Court,
W.D. New York.

Jan. 29, 1996.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria (Jennifer R. Willig, of counsel), Buffalo, New York, for Plaintiff.

Kenneth A. Schoetz, Erie County Attorney (Timothy J. Trost, Assistant County Attorney, of counsel), Buffalo, New York, for Defendants.

CURTIN, District Judge.

Plaintiff Peter X. McCarthy was discharged from his position as Vice President for Administration at Erie Community College ("ECC") in the summer of 1994. On August 26, 1994, he brought this action under 42 U.S.C. § 1983, naming ECC and Louis J. Ricci, ECC's President, as defendants. Item 1. On October 5, 1994, he filed an amended complaint, adding as defendants five mem-

bers of ECC's Board of Trustees, in their individual and official capacities. Item 3. According to its terms, the amended complaint alleged violations of the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983; Art. 1, § 6 of the New York State Constitution; and New York State common law. Item 3, ¶ 10.

The defendants moved to dismiss. Item 6. In support of their motion they argued, *inter alia,* that the suit was "jurisdictionally defective" by reason of the plaintiff's failure to name either (1) ECC's Board of Trustees, or (2) Erie County, ECC's local sponsor, as defendants. They argued further that the plaintiff had not filed a Notice of Claim under New York General Municipal Law § 50–e, and so was precluded from proceeding against the County on one or more of the claims asserted.

Oral argument on the issue of the naming of proper institutional defendants was held on August 21, 1995. The court subsequently issued an order permitting the plaintiff to amend his complaint to name both the Board of Trustees and the County as defendants. Item 27. At the same time, the plaintiff's eleventh cause of action was dismissed. *Id.*

The plaintiff filed a second amended complaint. Item 29. Subsequently, the parties agreed that the defense of failure to file a Notice of Claim does not apply to the plaintiff's claims under federal law. Item 30, p. 1; Item 31, p. 1. In addition, the plaintiff requested leave to withdraw all of his state law claims. Item 31, pp. 1–2. The state law claims were dismissed, with prejudice, on November 20, 1995. Item 32. The Notice of Claim issue is therefore moot. Remaining are the plaintiff's federal constitutional claims that the defendants deprived him,

without due process, of both a property and a liberty interest in his continued employment at ECC.

■ In support of their motion to dismiss, the defendants argued that the amended complaint failed to state a due process claim.[1] Items 6, 7, 24. The plaintiff submitted a brief in response. Item 17. Oral argument was held on December 15, 1995.[2]

### *BACKGROUND*

In his second amended complaint, the plaintiff alleges that he was hired by ECC in or about December 1990, to fill the position of Vice President for Administration. Item 29, ¶ 15. At, or prior to, the time he accepted the position, he received a copy of the 1988 edition of the Erie County Employee Handbook. *Id.,* ¶¶ 16–17; Item 17, Ex. A. He asserts that as an ECC employee, he was "protected by and/or subject to the progressive discipline policy set forth in the [handbook]," and that "[t]he 'normal steps' in this . . . policy are 'oral warning, written warning, suspension from duty, and finally discharge.'" Item 29, ¶ 16. He claims that he relied upon the terms of the handbook as a condition to accepting employment at ECC. *Id.,* ¶ 17. Both the defendants and the plaintiff have placed copies of the handbook in the record. Item 6, Ex. D; Item 17, Ex. A.

On or about June 27, 1994, the plaintiff was notified in writing by ECC's President, Louis J. Ricci, that Mr. Ricci had lost confidence in his "ability, judgment and professionalism to lead [his] department," and intended to recommend to the ECC Board of Trustees that he be terminated as of September 1, 1994. Item 29, ¶¶ 19, 23; Item 3, Ex. A, p. 3. The plaintiff claims that subsequently, in July 1994, his secretary was transferred, leaving him with no secretarial assis-

---

**1.** The motion was filed on November 4, 1994, on behalf of ECC and the six individual defendants, almost eleven months before the Board of Trustees and the County were added as defendants. Nevertheless, since (i) it is clear that ECC was improperly named as a defendant, (ii) the Board of Trustees and the County have at all times been on notice of the filing of this action, and (iii) both the Board of Trustees and the County are represented by the County's Department of Law, which represented ECC in the action and filed

the motion to dismiss, the court will regard the motion as one on behalf of all current defendants.

**2.** Both the defendants and the plaintiff submitted affidavits in support of their positions. At oral argument, however, they agreed that the motion should be decided on the pleadings, as a motion to dismiss under Fed.R.Civ.P. 12(b)(6), and not treated as a motion for summary judgment.

tance; that on or about July 17, 1994, the defendants advertised the position of Vice President for Administration in the *Buffalo News,* seeking to replace him; and that in August 1994, they caused locks to be placed on the doors to his office, denying him access thereto. Item 29, ¶¶ 20–22.

President Ricci's June 27, 1994, memorandum to the plaintiff referred to several incidents and episodes of alleged incompetence, lack of effectiveness, and lack of professionalism as the basis for his decision. Item 29, ¶ 23; *see also,* Item 3, Ex. A. The plaintiff maintains that the alleged occurrences "are untrue, misleading and/or taken out of context." Item 29, ¶ 24. He claims further that, even if true, they "are encompassed within the progressive discipline policy of the Erie County Employee Handbook." *Id.,* ¶ 25.

The plaintiff states that while employed at ECC, he never received an oral or written warning, or a suspension from duty. Item 29, ¶ 26. He claims that he has not been given a hearing with regard to the alleged incidents of incompetence and misconduct, or provided with an opportunity to present witnesses or testify on his own behalf. *Id.,* ¶¶ 28–29.

## DISCUSSION

### 1. Standard for Motion to Dismiss

 On a motion to dismiss under Fed. R.Civ.P. 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). The court "should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992, cert. denied,* 507 U.S. 961, 972, 113 S.Ct. 1387, 1412, 122 L.Ed.2d 762 (1993)).

 If, on a motion to dismiss for failure to state a claim, matters outside the complaint are presented to and not excluded by the court, the motion must be treated as one

for summary judgment. Fed.R.Civ.P. 12(b); *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). However, even on a Rule 12(b)(6) motion, the court may consider certain evidentiary materials. The complaint itself is deemed to include any document attached as an exhibit, and any document incorporated by reference. *International Audiotext Network, Inc. v. American Telephone and Telegraph Co.,* 62 F.3d 69, 71–72 (2d Cir.1995); *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985). Further, the court may consider documents submitted by the moving party, without converting the motion to one for summary judgment, where "there [is] undisputed notice to plaintiff[ ] of their contents and they were integral to plaintiff['s] claim." *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d at 48; *see also International Audiotext Network, Inc. v. American Telephone and Telegraph Co.,* 62 F.3d at 72.

At oral argument, the parties agreed that the court should treat the defendants' motion as one to dismiss under Rule 12(b)(6), and should exclude from consideration all evidentiary materials submitted by the parties, with two exceptions—(i) the 1988 edition of the Erie County Employee Handbook, since its language forms an integral part of those of the plaintiff's claims that are founded on a theory of breach of employment contract, and (ii) the June 27, 1994, notice sent to the plaintiff by ECC President Louis Ricci, the contents of which form an integral part of those of the plaintiff's claims that are based on Mr. Ricci's allegations of incompetence and misconduct on the part of the plaintiff.

### 2. Deprivation of Property Interest Without Due Process

#### a. Property Interest in Government Employment

 As the Second Circuit has recently noted, "[w]hen a governmental employee is found to have a 'property interest' in continuation of his or her employment, the Due Process Clause of the Fourteenth Amendment forbids discharge unless the employee is afforded a pre-termination hearing." *O'Neill v. City of Auburn,* 23 F.3d 685, 688

(2d Cir.1994). "Property interests in employment are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Id.* (internal quotation marks omitted). In this case, the plaintiff maintains that he had a property interest in his employment at ECC, created by the terms of the Erie County Employee Handbook.

### b. *New York Employment At Will Rule*

▉ In New York, it is settled law that "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919 (1987). The presumption is a rebuttable one, and in determining whether it is overcome, a trier of fact "will have to consider the course of conduct of the parties, including their writings and their antecedent negotiations." *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 466, 457 N.Y.S.2d 193, 198, 443 N.E.2d 441, 446 (1982) (internal quotation marks and citations omitted); *see also, Jones v. Dunkirk Radiator Corp.,* 21 F.3d 18, 22 (2d Cir.1994).

▉ In *Weiner,* the New York Court of Appeals held that the language of an employer's personnel handbook, when considered in the light of other evidence, provided sufficient evidence of a limitation on the employer's right to terminate to sustain a cause of action. *Weiner v. McGraw–Hill, Inc.,* 457 N.Y.S.2d at 197, 443 N.E.2d at 445; *see also, Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86 (1983).[3] The court noted that the plaintiff had alleged that (1) he was induced to leave his former employment with the assurance that the defendant would not discharge him without cause, (2) that this assurance was incorporated into his employment application, (3) he had rejected other

offers of employment in reliance on the assurance, and (4) on several occasions he had recommended that certain of his subordinates be dismissed, and had been instructed to proceed in strict compliance with the handbook because employees could be discharged only for just cause. *Id.* These factors combined to present a triable issue as to whether the defendant's right to terminate the plaintiff's employment was indeed restricted. *Id.*

In *Sabetay,* the Court of Appeals emphasized that an *express restriction* on the right to discharge, and not simply an implied limitation, is essential. *Sabetay v. Sterling Drug, Inc.,* 514 N.Y.S.2d at 213, 506 N.E.2d at 923. But an express limitation in an employee handbook or manual is not, by itself, enough. "It is not [the employer's] subjective intent, nor any single act, phrase or other expression, but the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain, which will control." *Weiner v. McGraw–Hill, Inc.,* 457 N.Y.S.2d at 198, 443 N.E.2d at 446 (internal quotation marks omitted); *see also, Jones v. Dunkirk Radiator Corp.,* 21 F.3d at 22.

### c. *Erie County Employee Handbook*

▉ In this case, the plaintiff relies on certain language in the Erie County Employee Handbook as the basis for his claim that he had a property interest in his employment at ECC. I note, first of all, that the parties disagree as to whether the handbook, or any of its provisions, was applicable to the plaintiff in his position as a high-level administrator at the college. *See* Item 7, p. 18; Item 17, pp. 11–15; Item 24, pp. 11–13. But even assuming, for the purposes of this motion, that it was, there can be no doubt that its language fails to support the plaintiff's claim.

In pertinent part, the Erie County Employee Handbook states that:

Erie County endorses the policy of Progressive Discipline. Normal steps in this

---

**3.** The handbook stated explicitly that " '[t]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed. However, if the welfare of the company indicates that dismissal is necessary, then that decision is arrived at and is carried out forthrightly.' " *Weiner v. McGraw–Hill, Inc.,* 457 N.Y.S.2d at 194.

process are oral warning, written warning, suspension from duty, and finally discharge. The policy of Progressive Discipline does not necessarily apply for a number of the more serious violations or offenses, where immediate discharge, in line with due process, may be required.

General work rules that apply in all County units are listed below, and are arranged in three groups, by type or seriousness of violation. The list is not all-inclusive, because no list of rules can cover every possible situation. Other work rules may be required for individual locations, work units, or types of activities.

Item 17, Ex. A, p. 30. These statements are followed by a list of general rules, designated as Group A, Group B, and Group C rules. *Id.* at 31–34. Violations of Group A rules "may result in immediate discharge." *Id.* at 31. Violations of Group B rules may result in suspension or discharge, and violations of Group C rules may result in written reprimand, suspension or discharge. *Id.* at 32–34.

The plaintiff maintains that he was terminated for alleged incidents that would represent violations of rules listed in Group A or Group B. Item 17, p. 15. He acknowledges that under the provisions of the handbook, violations of Group A rules can result in immediate discharge. *Id.* He argues, however, that such discharge must nevertheless be "in line with due process," quoting the language of p. 30 of the handbook. *Id.*

The problem with the plaintiff's position is that there is no express assurance in the handbook that termination would be for cause only, or that the policy of progressive discipline endorsed by the County would be followed in every case. *Cf. Weiner v. McGraw–Hill, Inc.,* 457 N.Y.S.2d at 194, 443 N.E.2d at 442 (limitation on the right to discharge found when personnel handbook stated that "the company will resort to dismissal for just and sufficient cause only ..."); *Novinger v. Eden Park Health Services, Inc.,* 167 A.D.2d 590, 563 N.Y.S.2d 219, 221 (3d Dept.1990) (personnel manual establishing a four-step disciplinary procedure, but failing to give an express assurance that termination would be for cause only, failed to support plaintiff's claim of limitation on the

employer's right to discharge), *appeal denied,* 77 N.Y.2d 810, 571 N.Y.S.2d 913, 575 N.E.2d 399 (1991); *Marvin v. Kent Nursing Home,* 153 A.D.2d 553, 544 N.Y.S.2d 210, 211–12 (2d Dept.1989) (where policy and procedures manual listed grounds for termination and procedures for discipline, but did not state (i) that termination was limited to the grounds stated, or (ii) that the disciplinary procedures would be followed in all cases, or (iii) that termination would be for cause only, the "failure to establish an express limitation on the [defendant's] right to discharge the plaintiff at will [was] fatal to the plaintiff's case"). *See also, Preston v. Champion Home Builders, Inc.,* 187 A.D.2d 795, 589 N.Y.S.2d 940, 941–42 (3d Dept.1992); *Dickstein v. Del Laboratories, Inc.,* 145 A.D.2d 408, 535 N.Y.S.2d 92, 93–94 (2d Dept. 1988), *appeal denied,* 73 N.Y.2d 709, 540 N.Y.S.2d 1004, 538 N.E.2d 356 (1989); *Melnyk v. Adria Laboratories,* 799 F.Supp. 301, 309–10 (W.D.N.Y.1992).

The plaintiff relies heavily on *Tiranno v. Sears, Roebuck & Co.,* 99 A.D.2d 675, 472 N.Y.S.2d 49 (4th Dept.1984). In that case, the Fourth Department found that the statement in a personnel manual that "[t]he Company may terminate an individual's employment at any time that his/her work ... does not measure up to Company standards" was susceptible to being interpreted as requiring "just cause" for termination. *Tiranno v. Sears, Roebuck & Co.,* 472 N.Y.S.2d at 50. The court held that a triable issue of fact existed as to whether, under the totality of the circumstances, good cause was required for the plaintiff's termination, and if so, whether good cause existed. *Id.* The plaintiff here argues that this court should follow the reasoning set forth in *Tiranno,* and allow the case to proceed to a factual determination as to whether, considering all of the circumstances, the language of the Erie County Employee Handbook could or should be interpreted as creating a limitation on the defendants' right to discharge him. *See* Item 17, pp. 10–11.

I see no reason to follow *Tiranno.* As the Second Circuit noted in *Wright v. Cayan,* 817 F.2d 999 (2d Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987), "[t]he

authority of *Tiranno v. Sears, Roebuck & Co.* is rather shaky, to say the least, in light of the same court's subsequent decision in *Collins v. Hoselton Datsun, Inc.*" *Id.* at 1005. In *Collins,* the Fourth Department held that no limitation could be inferred from the statement in an employee handbook that "[y]ou are ... assured of steady employment as long as you are performing well." *Collins v. Hoselton Datsun, Inc.,* 120 A.D.2d 952, 503 N.Y.S.2d 203, 204 (4th Dept.1986). The Fourth Department's decision not to follow the rationale of *Tiranno,* along with the weight of New York authority holding that any limitation on the right to discharge must be express, persuades me that the plaintiff's reliance *Tiranno* is misplaced. *See also, Melnyk v. Adria Laboratories,* 799 F.Supp. at 309, n. 1.[4]

### 3. Deprivation of Liberty Interest Without Due Process

A government employee's liberty interest may be implicated when he or she is dismissed "based on charges 'that might seriously damage his standing and associations in his community' or that might impose 'on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.'" *Brandt v. Board of Cooperative Educational Services,* 820 F.2d 41, 43 (2d Cir.1987) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)). The charges must be made public by the employer, and the employee must allege that the charges are false. *Id.* Where a liberty interest is implicated, the employee is entitled, under the due process clause, to notice and an opportunity to be heard. *Id.* (citing *Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. at 2707). The remedy mandated " 'is an opportunity to refute the charge' against him in order 'to clear his name.'" *Baden v. Koch,* 799 F.2d 825, 832 (2d Cir.1986) (quoting *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977)).

In the present case, the plaintiff maintains that he has been deprived of liberty without due process because (1) the June 27, 1994, memorandum from ECC President Louis Ricci, notifying the plaintiff that Mr. Ricci intended to recommend to the Board of Trustees that he be terminated, referred to various incidents suggesting incompetence or misconduct on the part of the plaintiff; (2) the alleged incidents did not occur, or Mr. Ricci's portrayal of them was misleading or failed to place them in the proper context; (3) the memorandum was published by being placed in his personnel file, thereby "arguably" being made available to potential employers, *see* Item 17, p. 19; and (4) the plaintiff was offered no opportunity for a hearing with regard to the alleged incidents of incompetence or misconduct.

Governmental allegations of professional incompetence made in connection with an employee's termination will support a cause of action for a name-clearing hearing if "the allegations go to the very heart of [the employee's] professional competence, and threaten to damage his professional reputation, significantly impeding his ability to practice his profession." *O'Neill v. City of Auburn,* 23 F.3d at 692–93 (internal citations and quotation marks omitted). In this case, it is at least arguable that President Ricci's June 27, 1994, memorandum contains allegations of incompetence or misconduct that are sufficiently serious to support a liberty interest claim. The allegations are far from trivial, and could well be viewed by a trier of fact as "go[ing] to the very heart of [the plaintiff's] professional competence." *Id.* The defendants do not appear to dispute that when the memorandum was placed in the plaintiff's personnel file, it was "published" for purposes of his claim. *Cf. Brandt v. Board of Cooperative Educational Services,* 820 F.2d at 45. And the plaintiff has plainly alleged that the charges are false.

---

4. The plaintiff's reliance on *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847 (2d Cir.1985) is similarly misplaced, since in that case, unlike here, the employer's Operations Manual contained clear language expressly limiting the right to terminate, stating that *"[s]eniority shall be the sole factor for determining demotions, transfers* or *termination caused by job elimination or force reduction...." Id.* at 850 (emphasis added). In *Gorrill,* the Second Circuit followed *Weiner* in holding that, under the totality of the circumstances, the employer should be bound by the clear language of the manual. *Id.* at 852–53.

Nevertheless, the plaintiff's claim must be dismissed, since he has failed to sufficiently allege a deprivation of due process.

Generally, in determining whether or not a plaintiff has been denied due process in cases of this kind, courts must determine "the precise nature of the government function involved as well as of the private interest that has been affected by governmental action," and then "weigh the strength of the individual's interest, the risk of erroneous deprivation, the probable value, if any, of requested additional procedures and the state's interest in providing (or not providing) those procedures." *Baden v. Koch*, 799 F.2d at 831 (quotation marks and citations omitted). A threshold issue, of course, is whether there is any allegation that (1) the plaintiff requested additional procedures, and (2) the request was denied. "In order to succeed on his liberty interest claim, [the plaintiff] must . . . prove that [the defendant] *improperly refused* to grant him a post-removal opportunity to refute the false charges that led to his removal." *Id.* at 830 (emphasis added).

Here, it is clear enough that the plaintiff received ample notice of the alleged incidents of incompetence or misconduct made by President Ricci. He has placed in the record a copy of Mr. Ricci's June 27, 1994, memorandum, countersigned by himself on July 8, 1994, and containing his statement that "[a]lthough I do not agree with any of this I did receive it." Item 17, Ex. B, p. 3. He claims that he was provided with no hearing. Item 29, ¶¶ 28–29. But he has not alleged that, after receiving the June 27, 1994, memorandum, he made any request for an opportunity to clear his name, or that the defendants denied such a request. In the absence of any such allegation, his liberty interest claim must fail.

### CONCLUSION

For the reasons given above, the defendants' motion to dismiss the plaintiff's due process claims is granted. A review of the plaintiff's second amended complaint and of the record reveals that there are no viable claims remaining. The case is therefore dismissed.

So ordered.