Harry W. Davis, J.
Defendant, who lived alone and was in fact about to be released from hospital, hired plaintiff as com *103 panion, chauffeur, cook, housekeeper, and manager of her home at a salary of $150 per week.
Plaintiff claims, however, that she was hired at this salary for a five-day week and, since she worked seven days in each week, she claims $270 for six extra days at time and one-half. She asserts, additionally, that it was agreed that her employment was to be until September 12, 1969, and there is, therefore, also due to her an additional sum of $1,560 for this period. Other items of her claim are discussed elsewhere in this opinion.
Plaintiff was hired on June 14, 1969. She was unceremoniously discharged on July 5, 1969. Defendant paid to plaintiff the total sum of $600 by checks dated June 19, June 26, July 2 and July 5. The last check was dated the day of discharge. Each check was in the amount of $150.
Defendant denies all the material allegations of the complaint; she challenges the jurisdiction of the court and sets up a defense of failure by plaintiff to mitigate damages. Defendant also interposes two counterclaims, one for $100 based upon the plaintiff’s improper use of a rented automobile, and the other for $10,000 for injury to defendant’s reputation.
At the trial, defendant urged upon the court that the contract of employment was one at will and could thus be terminated at any time by either party (Parker v. Borock, 5 N Y 2d 156). But if this court found that it was a contract for a fixed period, then plaintiff could nevertheless be discharged for cause. The defendant, therefore, presented evidence of cause, while plaintiff disputed .the same.
Even taking the position most favorable to the plaintiff, to wit, that the period of employment was fixed until September 12, 1969, I am not persuaded that she could be discharged only for cause.
I can think of no closer or more confidential relationship between master with servant that the one here. The proximity was unremitting; they slept in the same house or apartment; they ate at the same .table, and they spent all their waking hours near and with each other. Whether the plaintiff pleased the defendant or not was surely a matter of personal taste. Suppose the whole world thought the plaintiff a wonderful companion and cook, but. defendant did not, would defendant nevertheless be bound by the objective standards of others? I think not. I am of the opinion that, under those circumstances, the defendant could with impunity terminate plaintiff’s services at any time that her personal taste was not satisfied, even if .the employment was for a fixed period. There is, to be sure, a paucity of cases on this precise question in this jurisdiction, *104 probably due to the fact that disputants saw the wisdom of this position and thus did not allow the dispute to ripen into litigation. In an early English case, however, (Johnson v. Shrewsbury & Birmingham Ry. Co., 3 DeG.M. & G. 914, 926 [1853]), Knight Bruce, L. J., made the following observations regarding master and servant: ‘ ‘ Let him be one of the best and most competent persons that ever lived, still, if the two do not agree, and good people do not always agree, enormous mischief may be done. A man may have one of the best domestic .servants, he may have a valet whose arrangement of clothes is faultless, a coachman whose driving is excellent, a cook whose performances are perfect, and yet he may not have confidence in him; and while on the one hand all that the servant requires or wishes (and that reasonably enough) is money, you are, on the other hand, to destroy the comfort of a man’s existence * # * by compelling him to have constantly about him in a confidehital situation one to whom he objects.”
In another early ease it was said: “ If the relation of employer and employe is to be of value or profit to either, it must be marked by some degree of mutual confidence and satisfaction, and when .these are gone and their places usurped by dislike and distrust, it is to the advantage of all concerned that their relations be severed.” (Gossard Co. v. Crosby, 132 Iowa 155, 164.)
The difficulty here lies not in what was included in the contract of employment, but rather in what was omitted. Certainly, if the parties had agreed on a fixed period of employment, but added “ provided defendant is satisfied with plaintiff’s services,” there would be no question but that defendant would be at liberty to discharge the plaintiff whenever she was not so satisfied, and that would be a matter of personal taste or judgment. (Wynkoop H. C. Co. v. Western Union Tel Co., 268 N. Y. 108; Crawford v. Mail & Express Pub. Co., 163 N. Y. 404; Mackay v. Arthur Hammerstein’s Prods., 164 N. Y. S. 164.)
The question presents itself, therefore, whether the court may imply that provision in .this type of agreement. The answer to this must be in the affirmative.
Not to imply such a provision would make the contract unreasonable and place one of the parties at the mercy of the other (Schoellkopf v. Coatsworth, 166 N. Y. 77, 84). This becomes even more persuasive when we consider that- plaintiff had been forewarned that defendant was 11 at times difficult.” Plaintiff’s reply was that she worked with difficult people before. I would assume this to be an implied representation that plaintiff possessed the reasonable skill necessary .to cope with this problem *105 (Harmer v. Cornelius, 28 L. J. C. P. 85). The fact that the employment ended so abruptly on July 5th is proof enough that she did not have that skill despite the representation.
With regard to the claim of $270 for the days off, I am satisfied that the plaintiff offered herself and was employed on a seven-day-per-week basis. Accordingly, this part of the claim is disallowed.
The sum of $20 claimed as a loan; the sum of $22 as a reimbursement for a motel; the sum of $4.85 claimed for gasoline on the return trip to New York from Amagansett, and the sum of $55 for meals during this return trip, are all disallowed since plaintiff failed to sustain the burden of proof on these items.
The sum of $25 sought as reimbursement of service of summons is disallowed since this is not a proper item of damage and may be recovered only if plaintiff is successful in this action.
The claim of $60 for the waiting time of June 12 and 13 is also disallowed. I am satisfied that plaintiff’s employment was to commence on June 14, when defendant left the hospital, and, in any event, the check paid to her on June 19 was for the prior week. This would have been from June 12. Plaintiff’s complaint is accordingly dismissed.
We come now to the defendant’s defenses and counterclaims. The defenses of lack of jurisdiction and failure to mitigate damages are both dismissed, since no proof was offered on either issue at the trial.
The defendant’s counterclaim for defamation is based upon both the spoken word and the written word. Oral statements are alleged to have been made about the defendant as follows: (1) “ Your mother attempted to commit suicide; ” (2) “ Your mother is berserk.” I do not find these spoken words actionable by themselves, and defendant did not prove special damage as the natural, immediate and legal consequence of these words. This portion of the claim, therefore, must fall. (Terwilliger v. Wands, 17 N. Y. 54; Gurtler v. Union Parts Mfg. Co., 1 N Y 2d 5.)
The remaining portion of this counterclaim is based upon statements made by plaintiff about defendant in a letter sent to Mrs. Jack Geller (defendant’s daughter) as follows:
(1) “ She wanted to swallow a bottle of sleeping pills.”
(2) “She went berserk.”
In Kimmerle v. New York Evening Journal (262 N. Y. 99, 102) which was an action for libel, the court stated:
‘ ‘ The law of defamation is concerned only with injuries to one’s reputation. Except for the limited extent provided by statute (Civil Rights Law * * * § 50), there is no right of *106 privacy. * * * Written words, the effect of which is to invade privacy and to bring nndesired notoriety, are without remedy, unless they also appreciably affect reputation.”
11 Reputation is said in a general way to be injured by words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society.”
I do not find the quoted portions of the letter to meet this test. Webster’s New International Dictionary of the English Language (2d ed.) defines “ berserk ” as “ Frenzied; enraged ” and “In frenzied rage ”, and the other -statement, certainly when read in the narrative of the letter or even out of context, fails the test. Accordingly, this counterclaim is dismissed.
The other counterclaim is based upon the improper use by the plaintiff of a rented ear. The car was rented by plaintiff with defendant’s consent from Avis. The charge was to be paid by defendant. When plaintiff was discharged on July 5, she drove the car back to New York from Amagansett, where the parties were staying at the time. It is agreed that when plaintiff left, the car registered 932 miles. When it was returned to Avis in New York, it registered 1148 miles, a difference of 216 miles. Since the mileage from Amagansett to New York is only 109 miles, plaintiff used the car for an additional 107 miles, which .remained unexplained by her. The bill from Avis discloses that the sum of $.08 per mile was charged. There is no explanation why it took from July 5 to July 9 to return the car; but neither is there any per diem charge indicated on the bill. The court, therefore, will allow the defendant only the sum of $8.82 for 107 miles at 8 cents per mile, plus 3% tax.
Plaintiff’s complaint, therefore, is dismissed, and defendant is granted judgment on her counterclaim against the plaintiff in the amount of $8.82.