William ROTHENBERG,
Plaintiff-Appellant,

v.

LINCOLN FARM CAMP, INC.,
Defendant-Appellee.

No. 484, Docket 84–7707.

United States Court of Appeals,
Second Circuit.

Submitted Dec. 20, 1984.

Decided Feb. 25, 1985.

Fox, Glynn & Melamed, New York City (John R. Horan, Carl L. Distefano, New York City, of counsel), for plaintiff-appellant.

Cuddy & Feder, White Plains, N.Y. (Thomas R. Beirne, Thomas H. Kozlark, White Plains, N.Y., of counsel), for defendant-appellee.

Before MESKILL, KEARSE and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff William Rothenberg appeals from a final judgment of the United States District Court for the Southern District of New York, Mary Johnson Lowe, *Judge,* dismissing his complaint seeking damages for the breach by defendant Lincoln Farm Camp, Inc. ("Lincoln" or the "Camp"), of his one-year contract of employment with Lincoln. The district court granted Lincoln's motion for summary judgment on the ground that Lincoln had terminated the contract pursuant to a clause that the court construed to permit Lincoln to terminate Rothenberg's employment at any time, with or without cause. On appeal, Rothenberg contends (1) that the court misinterpreted the clause, and (2) that even if that clause purported to allow Lincoln to terminate at will, the termination was impermissible because the law of the State of New York requires just cause for the early termination of an employment contract for a stated term. We conclude that summary judgment was improperly granted, and we vacate the judgment and remand for further proceedings.

I. BACKGROUND

In July 1983, Rothenberg and Lincoln signed an agreement ("Agreement") for the employment of Rothenberg as the Camp's assistant director from May 2, 1983, through May 1, 1984, at an annual salary of $30,000. The Agreement contained a provision ("Clause 4") stating that

[i]f for unforseen [*sic*] condition, circumstance, war, epidemic, governmental restriction, administrative decision, Act of God or any other reason the Camp should find it advisable to terminate this agreement before * the contract expiration date, either party shall provide the other party with two weeks' notice, salary for which period shall constitute severence [*sic*] pay in full discharge, release and settlement of any and all claims.

The portion of Clause 4 preceding the asterisk was part of a preprinted form supplied by Lincoln; the asterisk and the portion following it were added by hand. Clause 5 of the Agreement gave the Camp the right to terminate the Agreement for cause, and made no provision for notice or severance pay. On or about August 16, 1983, Lincoln gave Rothenberg notice that it was terminating the Agreement effective August 21, 1983, and on August 20 it gave Rothenberg a check apparently designated as severance pay.

Rothenberg promptly commenced the present diversity action, contending that the August 1983 termination constituted a breach of the Agreement and seeking payment of the remaining $19,000 due for the agreed term of his employment. Lincoln moved for summary judgment dismissing the complaint, contending that Clause 4 gave it the right to terminate the Agreement for any reason, and that in any event it had terminated the Agreement because Rothenberg's services had been unsatisfactory and detrimental to the Camp. Rothenberg cross-moved for summary judgment in his favor, asserting (1) that Clause 4 could not be construed as broadly as Lincoln would have it, since the phrase "for any reason" should be read, in accordance with the principle of *ejusdem generis,* as

allowing termination only for any unstated *force majeure* reason, and (2) that he had consistently been informed that his services for the Camp were satisfactory.

The district court granted Lincoln's motion, finding that Clause 4 clearly and unambiguously allowed Lincoln to terminate the Agreement "for any other reason," and that the rule of *ejusdem generis* therefore did not apply.

## II. DISCUSSION

On appeal, Rothenberg contends that summary judgment should have been granted in his favor because (1) the district court should have applied the principle of *ejusdem generis* to conclude that Lincoln was not entitled to terminate the Agreement on its whim, and (2) where, as here, the employment contract was for a definite term, New York law does not permit the employer to terminate the contract prior to the agreed termination date without just cause. Although we do not agree that Rothenberg was entitled to summary judgment, we conclude that summary judgment could not properly be granted against him.

### A. *The Meaning of Clause 4*

█ As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties. *E.g., Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 171–72, 350 N.Y.S.2d 895, 898, 305 N.E.2d 907, 910 (1973); *Mallad Construction Corp. v. County Federal Savings & Loan Association*, 32 N.Y.2d 285, 291, 344 N.Y.S.2d 925, 930, 298 N.E.2d 96, 101 (1973); *Airco Alloys Division, Airco, Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 77, 430 N.Y.S.2d 179, 184 (4th Dep't 1980); 4 S. Williston, *Williston on Contracts* § 600 (3d ed. 1961). Where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning, the question of interpretation is one of law to be answered by the court. *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 25 N.Y.2d 535, 540, 307 N.Y.S.2d 449, 452, 255 N.E.2d 709, 712 (1969); *Bethlehem Steel Co. v. Turner Construction Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 92, 141 N.E.2d 590, 592 (1957); *Heller & Henretig, Inc. v. 3620–168th Street, Inc.*, 302 N.Y. 326, 330, 98 N.E.2d 458, 459 (1951); 3 A. Corbin, *Corbin on Contracts* § 554, at 222 (1960). However, "[w]here contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment [is] improper." *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (quoting *Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 468, 471 (2d Cir.1969)); *see M. O'Neil Supply Co. v. Petroleum Heat & Power Co.*, 280 N.Y. 50, 56, 19 N.E.2d 676, 679 (1939); *Holgerson v. Swan Lake Poultry Co.*, 30 A.D.2d 591, 592, 290 N.Y.S.2d 21, 23 (3d Dep't 1968). Since an interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect, *Corhill Corp. v. S.D. Plants, Inc.*, 9 N.Y.2d 595, 599, 217 N.Y.S.2d 1, 3, 176 N.E.2d 37, 39 (1961); *Rentways, Inc. v. O'Neil Milk & Cream Co.*, 308 N.Y. 342, 347, 126 N.E.2d 271, 273 (1955); *Restatement (Second) of Contracts* § 203(a) (1981), we are persuaded that there are at least two fairly reasonable interpretations of Clause 4 and that summary judgment was therefore improper.

The district court held that the phrase "for any other reason" in Clause 4 meant that the contract was terminable at will by the employer. Such a reading gives literal effect to the words of that phrase and is therefore not unreasonable. Yet if this had been the intent of the parties, there would have been no reason to include in Clause 4 a listing of any specific grounds for termination. If the parties had intended that the Agreement be terminable at will, Clause 4, rather than mentioning "unforseen [*sic*] condition, circumstance, war, epidemic, governmental restriction, administrative decision[, or] Act of God," could have begun simply "If for any reason the Camp should find it advisable to terminate this agreement [etc.]. . . ." The latter read-

ing is essentially the one advanced by Lincoln and adopted by the district court; yet it renders entirely superfluous the seven bases for termination specifically described in Clause 4 as actually drafted. We cannot conclude that making meaningless the seven specifications was clearly and unambiguously the intent of the parties.

Rothenberg's contention that the "any other reason" phrase of Clause 4 should be read in accordance with the principle of *ejusdem generis* as "any other *similar* reason" is thus not an unreasonable argument. Though this principle "is not in and of itself a rule of interpretation, but merely an aid to interpretation when the intention is not otherwise apparent[, and i]t never controls when it clearly appears from the instrument that no such limitation was intended," *Brooklyn City Railroad Co. v. Kings County Trust,* 214 A.D. 506, 511, 212 N.Y.S. 343, 347 (2d Dep't 1925), *aff'd,* 242 N.Y. 531, 152 N.E. 414 (1926) (per curiam), its use here would not be inappropriate since it is hardly clear that the parties intended the general phrase to be so all-encompassing as to render the seven specified grounds for termination mere surplusage. *See Kama Rippa Music, Inc. v. Schekeryk,* 510 F.2d 837 (2d Cir.1975), in which we affirmed, principally on other grounds, the district court's narrow construction of the phrase "or for any similar or dissimilar reason" that followed a list of *force majeure* events similar to the seven items listed in Clause 4. There we noted that *ejusdem generis* might properly have been applied to "constru[e] this final and most generic term in [the] series in light of the more specific terms preceding it." *Id.* at 841 n. 5.

■ Thus, there is more than one reasonable interpretation of Clause 4, and we conclude that there are fact questions, to be determined by a jury, as to whether the parties intended that a Clause 4 termination could be effected at will or only for a *force majeure* type reason. Rothenberg, in support of his position on the motions for summary judgment, submitted his affidavit stating that prior to entering into the

Agreement he had advised the Camp's President, Harold Loren, that he would leave his prior employment and work for the Camp only if guaranteed employment for at least one year and that the possibility of the Camp's terminating his employment prior to the end of the year was never discussed. The Camp, in contrast, submitted Loren's affidavit which suggested that all of the terms of the Agreement— and in particular Clause 4 which was modified by hand—had been negotiated. There are circumstances that could give credence to each position. In support of the Camp's position, there is the fact that Clause 4's provision for notice and a payment to be deemed severance pay was written in by hand at the foot of the Agreement. It is difficult to believe that Rothenberg signed the Agreement, just below this insertion, without being aware of the possible breadth of Clause 4. On the other hand, it is also difficult to believe that Rothenberg, knowing that camping is a seasonal activity, would have granted the Camp the power to terminate his one-year contract early without cause when the bulk of his services would have been performed within the first four months of that year.

The record thus raised substantial questions as to the intent of the parties. Although a jury might reach the conclusion that the parties intended the "for any other reason" phrase to give Lincoln license to terminate for any reason whatever, rather than just for a reason of the type already specified, that conclusion was not a proper one for the court to reach as a matter of law.

### B. *State Law Requirement of Cause*

■ Notwithstanding the above discussion as to the possible interpretations of Clause 4 and our conclusion that its meaning could not properly be determined as a matter of law, it is possible that the factual questions as to Clause 4 will not, ultimately, have to be decided by the jury, for as a general rule under New York law, "[a] contract of employment for a definite term may not lawfully be terminated by the em-

ployer, prior to the expiration date in the absence of just cause," *Alpern v. Hurwitz*, 644 F.2d 943, 945 (2d Cir.1981) (applying New York law); *accord Levine v. Zerfuss Offset Plate Service Co.*, 492 F.Supp. 946, 948 (S.D.N.Y.1980); *Crane v. Perfect Film & Chemical Corp.*, 38 A.D.2d 288, 291, 329 N.Y.S.2d 32, 34 (1st Dep't 1972); *Carter v. Bradlee*, 245 A.D. 49, 50, 280 N.Y.S. 368, 370 (1st Dep't 1935), *aff'd*, 269 N.Y. 664, 200 N.E. 48 (1936) (per curiam); *Vogel v. Pathe Exchange, Inc.*, 234 A.D. 313, 318, 254 N.Y.S. 881, 886 (2d Dep't 1932) (contract for a stated term may be terminated by employer only for a "cause sufficient in law which would justify an employer in discharging an employee"). This rule applies even where the employment contract, by its terms, purports to reserve to the employer the right to terminate the contract at will.

In *Carter v. Bradlee*, for example, the Appellate Division construed an employment contract that stated that "[t]his Agreement is made for two years from November 1st, 1925, but it is understood and agreed that *we retain the right to terminate the Agreement and to discharge you at any time, should we feel called upon to do so for any reason.*" 245 A.D. at 50, 280 N.Y.S. at 370 (emphasis added). Despite the apparently unequivocal reservation by the employer of the right to terminate the contract at will, the *Carter* court held that the employer was entitled to discharge the employee prior to the expiration of the contract term only for a " 'reasonable' ground ... that ... must be attended with good faith." *Id.* The court rejected the contention that the contract should be read as entitling the employer to terminate it at will, reasoning that an interpretation that "would place one of the parties at the mercy of the other" was to be avoided. *Id.*

If this general principle is applicable to the present case, it will make the Camp's reliance on Clause 4 irrelevant, for if the termination was with just cause Clause 4 need not have been invoked, while if the termination was without just cause Clause 4 could not lawfully be invoked.

Two exceptions, however, have been carved from the general principle. First, where the employment depended upon a close, confidential relationship, such as between an attorney and client or an individual and his personal servant, the employment contract was considered terminable at will by either party, notwithstanding any stated term. *See, e.g., Martin v. Camp*, 219 N.Y. 170, 114 N.E. 46 (1916) (attorney-client); *Brill v. Brenner*, 62 Misc.2d 102, 308 N.Y.S.2d 218 (N.Y.C.Civ.Ct.1970) (personal servant). Second, where the contract provided unequivocally that the employer could terminate the contract without cause but was thereupon obligated to pay a penalty to the employee, termination without cause was held not to constitute a breach if the penalty was paid. *See Olsen v. Arabian American Oil Co.*, 194 F.2d 477, 478 (2d Cir.), *cert. denied*, 344 U.S. 817, 73 S.Ct. 12, 97 L.Ed. 636 (1952); *Reiss v. Arabian American Oil Co.*, 279 A.D. 805, 109 N.Y.S.2d 625, 626 (2d Dep't 1952).

The first exception plainly does not apply to the present case. The employment relationship between a camp and its assistant director does not involve the special closeness or confidentiality that characterize relationships such as those between individuals and their personal servants or clients and their attorneys.

The applicability of the second exception is unanswerable from the present record. First, it is not clear how strictly the New York courts adhere to the proposition that a provision for termination without cause must be unequivocal, or, in this context, how those courts would regard Clause 4. Second, as Clause 4 is framed, it is not clear whether the employee was expected to work during the two-week period following the giving of notice. If he was expected to render services during that period, we doubt that New York law would consider the employer's payment a "penalty." Thus, there are questions of both law and fact to be determined in connection with the applicability here of the general New York principle that an employment

contract for a stated term may not be terminated without just cause.

Finally, if the general principle is applicable here, there will remain questions of fact for the jury as to whether or not the Camp terminated Rothenberg for cause. Although Rothenberg's affidavit stated that the Camp officials had always informed him that his services were being performed in a satisfactory manner, Loren's affidavit stated that Rothenberg's services had clearly proven unsatisfactory; the Camp's answer to the complaint alleged that Rothenberg had made false and unauthorized representations to the parents of campers that caused those campers to decide not to return to the Camp for the following season, and that these were the reason for Lincoln's decision to terminate Rothenberg's employment. Plainly there are issues of fact to be tried.

### CONCLUSION

The judgment of the district court dismissing the complaint is vacated, and the cause is remanded for further proceedings not inconsistent with this opinion. Costs to appellant.