NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0352n.06

Case Nos. 18-6187/6190

FILED
Jul 11, 2019
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JACK L. SLINGER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| THE PENDAFORM COMPANY, fka Penda | ) | TENNESSEE |
| Corporation, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

_____

Before: Merritt, Thapar, and Readler, Circuit Judges.

**MERRITT, Circuit Judge.** This is a breach of contract action at the summary judgment stage. The plaintiff, a fired CEO, claims his former employer breached their agreement by refusing to pay him severance upon termination. The company's defense is that the CEO breached the contract by soliciting employees to resign when he told them, "*don't be the last man standing*." We think that the phrase, in context, is ambiguous and that the case should go to trial. The District Court granted summary judgment to the employer. We reverse and remand.

FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Jack Slinger was the Chief Executive Officer of defendant PendaForm, a plastics automotive manufacturer, from 2011 to 2017. In December 2016, another materials company,

Trienda Holdings, bought PendaForm. New management disapproved of Slinger's past job performance as CEO, but decided to let his contract expire in July 2017 to avoid paying severance. Slinger's contract allowed for severance payments under certain circumstances like being terminated without cause. The acquirers told Slinger that until his contract expired, "[y]our only responsibilities are to forward email or other communication in a timely manner as well as answer questions in a reasonable timeframe that [another new manager] or I may have."

The merger of PendaForm and Trienda resulted in layoffs at PendaForm. In February 2017, Slinger traveled to his office at one of the company's facilities in Ohio to gather his belongings. During this visit, Slinger and employees bantered about the company's future. Allegedly, Slinger made a general statement in front of several employees, "don't be the last man standing." He did not recall saying those exact words. Some employees interpreted his visit as well-wishing and did not dwell on his words. Others testified that the comments alarmed them.

The next day, new management learned of Slinger's visit and comments. One hundred seconds after receiving a summary of Slinger's visit, David Kruger, PendaForm's new president, emailed the other Trienda principals: "I think we should term [Slinger's] contract for breach." Slinger was quickly terminated; Kruger said that he was being fired for "gross misconduct." Because the termination was for cause, the company paid no severance.

Slinger sued in state court for severance; PendaForm removed to federal court based on diversity. The District Court granted summary judgment to PendaForm on Slinger's claims of breach of contract. *Slinger v. Pendaform Co.*, No. 3:17–CV–00723, 2018 WL 3708023, at *5–7 (M.D. Tenn. Aug. 3, 2018). It subsequently awarded PendaForm $188,655.70 in attorneys' fees. [R.67]. Slinger has only appealed the District Court's findings on the breach of contract claim and on attorneys' fees.

This particular employment agreement is certainly not a model of clarity. The contract was for a specific term of employment and defined terminations for and without cause, but it also characterized Slinger's employment as "at-will." Slinger would receive twelve months of pay as severance if he was terminated without cause. One way Slinger could be fired for cause—and thus receive no severance—was by violating a broadly worded non-solicitation agreement.[1] That component of the contract says:

> Executive will not directly or indirectly at any time during the period of Executive's employment or for a period of two (2) years thereafter, attempt to disrupt, damage, impair or interfere with the Company's Business by raiding any of the Company's employees *or soliciting any of them to resign from their employment by the Company*, or by disrupting the relationship between the Company and any of its consultants, agents, representatives or vendors. Executive acknowledges that this covenant is necessary to enable the Company to maintain a stable workforce and remain in business.

(emphasis added). None of the terms in this paragraph, including the essential term "solicit," is defined. The parties agreed that Wisconsin law would apply to any disputes under the contract.

## ANALYSIS

The question presented is whether the District Court properly granted summary judgment to PendaForm on the breach of contract claim instead of sending the case to trial. Distilled, Slinger's claim is that PendaForm breached the employment agreement by terminating him without cause while characterizing his termination as for cause, and that he is thus entitled to severance for what was actually a without cause termination. And conversely, PendaForm says that it is *Slinger* who breached the contract by telling employees not to be the last man standing,

---

[1] The contract lists several reasons one can be terminated for cause, including committing a fraud or felony, bringing the company into substantial public disgrace or disrepute, gross misconduct, or insubordination. Counsel for PendaForm conceded at oral argument that the company is *only* relying on Slinger's alleged breach of the non-solicitation agreement rather than any of the other provisions. Slinger was originally told that he was fired for "gross misconduct" rather than for violating the non-solicitation agreement. When pressed in a deposition which reason had been the main one for firing Slinger (violating the non-solicitation agreement or gross misconduct), David Kruger replied, "Both."

thus negating his severance rights. If there is a genuine dispute of material fact in this case, then a trial is necessary. Our review is *de novo*, and we consider all facts in the light most favorable to Slinger, the non-movant. Fed. R. Civ. P. 56(c); *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001); *Felix v. Young*, 536 F.2d 1126, 1130 (6th Cir. 1976). We conclude that this was not an appropriate claim to resolve at the summary judgment stage.

### I. Deference to PendaForm's Beliefs

A cardinal rule of summary judgment is that the Court considers the facts in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). The District Court did not consider the facts in the light most favorable to Slinger. It did the opposite. In two of its orders, the District Court held that because PendaForm believed Slinger had breached the contract, the Court would not "second guess" that judgment. First, the Court said:

> Because Defendant *believed* Plaintiff breached the Contract by soliciting employees, and the evidence Plaintiff points to does not undercut the validity of that belief, summary judgment is appropriate in Defendant's favor for Plaintiff's breach of contract claim for pretextual termination with cause, and Defendant's motion is GRANTED.

2018 WL 3708023, at *7 (emphasis in italics added). In a separate order, the District Court explained:

> The Court held in its Memorandum opinion that it will not second guess an employer's *facially legitimate business decision* . . . The Court found Defendant *believed* the Contract was breached and terminated Plaintiff's employment. Based on Plaintiff's Complaint, the Court was only tasked with determining whether Defendant's reason for terminating Plaintiff was pretextual; the Court found it was not.

[R.62, Page ID 1274, n.1] (emphasis in italics added).

Whether PendaForm made a "facially legitimate business decision" in terminating Slinger is largely irrelevant as a matter of Wisconsin contract law. In Wisconsin, "[t]he general rule is

that a party who does not perform under the contract—even in a good faith belief that it need not perform under the contract—is responsible for losses resulting from the breach of the contract." *Mowry v. Badger State Mut. Cas. Co.*, 385 N.W.2d 171, 190 (Wis. 1986) (Abrahamson, J., dissenting). Under that standard, PendaForm could not breach the contract and then insulate its decision behind a good-faith invocation of the business judgment rule. 18B Am. Jur. 2d *Corporations* § 1452 ("The business judgment-rule . . . does [not] allow a board of directors to rewrite a contract to expand its own discretionary authority and diminish the contractual rights and protections given the other party."). To be sure, an employment contract could specify that a court, as did the District Court below, must defer to the employer's honest subjective belief with respect to termination decisions. *Coke v. Eau Claire Women's Care Serv. Corp.*, 691 N.W.2d 927 (table), 2004 WL 2984826, at *6 (Wis. Ct. App. Dec. 28, 2004). Here there is no such clause. *Cf. McAdams v. Marquette Univ.*, 914 N.W.2d 708, 735 (Wis. 2018) (discussing a discretionary cause provision in a contract). As a result, we do not simply defer to PendaForm's construction of how Slinger's conduct fits into the undefined language of the contract.

That is not to say we pay no heed to the perceptions and beliefs of PendaForm's managers at the time of Slinger's termination. Those perceptions and beliefs are evidence to consider along with any supporting or contrary evidence. But at the summary judgment stage, as PendaForm is the moving party, Slinger is the party who is entitled to all justifiable inferences. Accordingly, PendaForm's subjective belief cannot overcome a dispute of material fact in the face of a reasonable inference to the contrary in the non-movant's favor. Crediting the movant's gloss on or subjective belief about the facts does not satisfy Rule 56. *See Tolan v. Cotton*, 572 U.S. 650, 659 (2014) ("Considered together, these facts lead to the inescapable conclusion that the court below credited the evidence of the party seeking summary judgment and failed properly to

acknowledge key evidence offered by the party opposing that motion."); *Diebold*, 369 U.S. at 655. What PendaForm's managers believed is thus not dispositive of its entitlement to summary judgment. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992) ("Even if the Court were to consider the Affidavit, the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

## II. Genuine Dispute of Material Fact

At this stage of the case, the question before us is whether a genuine issue of material fact precludes summary judgment for PendaForm. Said differently, if Slinger breached the contract by soliciting employees to resign, then he is not entitled to severance. Do his words at the PendaForm facility—"don't be the last man standing"—amount to solicitation? There are two categories of disputed material fact here. First, what was said. Second, what the words meant.

What was said is fairly clear. Slinger testified that he does not remember saying "don't be the last man standing." But he did not deny using those words either, and multiple employees recall him saying it. There is some uncertainty as to whether Slinger approached the employees at the facility, but that he conversed with employees is clear.

What his words *meant* is disputed. The gloss that one puts on the interaction is the nub of this case. In the company's telling of the tale, Slinger deliberately approached every employee to deliver the same missive of impending doom, disrupting the workplace by soliciting employees to leave. In Slinger's version, he was approached by employees nervous about their job security after the merger and told them kindly to look after themselves. And indeed, some employees took his comments as a friendly goodbye, while others feared for their jobs. The District Court ignored these differences in simply stating that "five employees stated Plaintiff's comment concerned them

and believed they should find other employment." 2018 WL 3708023, at *7. That statement fails to summarize all of the evidence. "A study of the record in this light leads us to believe that inferences contrary to those drawn by the trial court might be permissible." *Diebold*, 369 U.S. at 655.

Slinger's characterization of these events as "pretext" suggests that PendaForm's narrative is false; he offers an alternative set of equally plausible inferences to be drawn from the record. Namely, that he never attempted to solicit or encourage anyone to resign, and that the company used the incident to avoid paying him severance. He is not without evidence to show that the company was looking to terminate him as early as possible without financial consequences. First, in a merger document, the company listed Slinger with the notation "No Sev[erance]." [R.42-1, Page ID 679]. Second, the one-hundred-second turnaround time between Kruger's receipt of the visit summary and his call to terminate Slinger's contract suggests the company over-emphasized the impact of the incident to fire Slinger. [R.42-1, Page ID 642]. Third, the company's reasons for terminating Slinger kept changing. "[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012) (quoting *Bourjaily v. United States,* 483 U.S. 171, 179–80 (1987)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The essential dispute is whether Slinger's words amounted to soliciting the employees to resign in violation of his employment contract. The contract does not define "solicit." Black's Law defines "solicitation" as "the act or an instance of requesting or seeking to obtain something; a request or petition." *Solicitation*, BLACK'S LAW DICTIONARY (10th ed. 2014). An older edition

situates the term in the context of prostitution and vice crimes, stating, "The term implies personal petition and importunity addressed to a particular individual to do some particular thing." *Solicit*, BLACK'S LAW DICTIONARY (4th ed. 1968). What Slinger said is not disputed, but the import and meaning of his words in context is disputed. Each party's characterization of the same events is plausible and is linked to specific evidentiary support. Given that the term "solicit" is susceptible to two reasonable, competing interpretations, summary judgment here was improper. *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985).

"[W]here different reasonable inferences may be drawn from undisputed facts, it is the province of the jury to determine from all the facts and circumstances whether one . . . has failed to perform." 17A Am. Jur. 2d *Contracts* § 590 (footnotes omitted); *see also Diebold*, 369 U.S. at 655; *S. J. Groves & Sons Co. v. Ohio Tpk. Comm'n*, 315 F.2d 235, 237–38 (6th Cir. 1963). As the Supreme Court of Wisconsin has said:

> [W]here, though the literal sense of the language of a contract be plain, it leads to absurd consequences or an unreasonable situation when applied to the facts, so as to render a resort to extrinsic evidence proper in order to determine the real intent of the parties, from which evidence conflicting reasonable inferences may be drawn, then it is proper for a jury to say which is the correct inference, and, under proper instructions, to say what the parties in fact agreed to. It is for the court to say, in such a situation, whether different minds may reasonably differ as to what was in fact intended, and if so, for the jury to say where the truth lies.

*Vilas v. Bundy*, 81 N.W. 812, 814 (Wis. 1900); *see also Racine Cty. v. Oracular Milwaukee, Inc.*, 781 N.W.2d 88, 99 (Wis. 2010) (factual disputes precluding summary judgment for breach of contract claim); *Franck v. CBL Partners, LLC*, 768 N.W.2d 62 (table), 2009 WL 590161, at *3 (Wis. Ct. App. March 10, 2009) (per curiam) ("With two different and reasonable interpretations, the contract was ambiguous, and the court correctly sent the issue to the jury."); *Otis Elevator Co. v. Fulcrum Const. Co., LLC*, 721 N.W.2d 157 (table), 2006 WL 2052126, at *6 (Wis. Ct. App. July 25, 2006) ("Our review of the evidence in the record reveals potential contradictions in the

facts and the inferences to be drawn from the facts. These genuine issues of material fact preclude summary judgment.").  So too here.

**CONCLUSION**

In light of the disputes of material fact present in this case, we reverse and remand for a trial.  Accordingly, the District Court's order on attorneys' fees, [R.67], is also vacated.