NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**OYSTER OPTICS, LLC,**
*Plaintiff-Appellant*

**v.**

**INFINERA CORP.,**
*Defendant-Appellee*

---

2019-2179

---

Appeal from the United States District Court for the Eastern District of Texas in Nos. 2:16-cv-01295 and 2:18-cv-00296-JRG, Judge J. Rodney Gilstrap.

---

Decided: February 11, 2021

---

MARC A. FENSTER, Russ, August & Kabat, Los Angeles, CA, for plaintiff-appellant. Also represented by PAUL A. KROEGER, REZA MIRZAIE, NEIL A. RUBIN.

JOSEPH V. COLAIANNI, JR., Fish & Richardson P.C., Washington, D.C., for respondent-appellee. Also represented by RUFFIN B. CORDELL, CHRISTOPHER DRYER, INDRANIL MUKERJI.

---

Before NEWMAN, O'MALLEY, and TARANTO, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

O'MALLEY, *Circuit Judge*.

This case presents a narrow question of contract interpretation. The parties dispute whether a license and release granted by Appellant to an entity and its "Affiliates" apply to Appellee, barring Appellant's claims of patent infringement. We conclude that at least the license applies to Appellee, and, additionally, that the license is retroactive. Accordingly, we *affirm* the district court's judgment in favor of Appellee.

## BACKGROUND

This appeal finds its roots in lawsuits filed by Oyster Optics, LLC ("Oyster") in 2016 against several entities, alleging infringement of patents directed to telecommunication systems and methods. Among the defendants were Coriant (USA) Inc., Coriant North America, and Coriant Operations, Inc. (collectively, "Coriant") and Infinera Corporation ("Infinera"). The United States District Court for the Eastern District of Texas consolidated these cases. After almost two years of litigation, Oyster and Coriant entered into a settlement agreement (the "Agreement"). As part of the settlement, Oyster granted Coriant and its "Affiliates" a license to several patents, including those at issue in this appeal. Oyster also released Coriant and its "Affiliates" from "any and all" claims based on the licensed patents, arising from activities in the United States up to June 27, 2018—the effective date of the Agreement.

Separately, Oyster filed an additional suit against Infinera in 2018, asserting infringement of an additional

patent.[1] On October 1, 2018—only a few months after Oyster and Coriant had settled their dispute—Infinera acquired Coriant. Infinera then filed a motion for summary judgment in this case, contending that it is a beneficiary of Oyster's license and release under the express terms of the Agreement. It argued that it was an Affiliate of Coriant under the Agreement, which defines the term to include any party with a greater than 50% ownership stake in Coriant, "now or in the future." J.A. 1033–34. Citing the license and release provisions of the Agreement, Infinera argued that the broad language of those provisions barred Oyster's infringement claims.

The district court agreed with Infinera. *Oyster Optics, LLC v. Infinera Corp.*, 2019 WL 2603173 (E.D. Tex. June 25, 2019). Methodically applying the definitions of key terms—including "Affiliates," "Licensed Patents," and "Licensed Products"—the district court concluded that, as an Affiliate of Coriant, Infinera had obtained a license and release under the Agreement's "unambiguous text." *Id.* at *7–10. Accordingly, the district court entered judgment in favor of Infinera. Oyster appeals. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1295.

## DISCUSSION

We review a grant of summary judgment under the law of the regional circuit, which in this case is the Fifth Circuit. The Fifth Circuit reviews a grant "of summary judgment de novo, applying the same standard as the district court." *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the

---

[1] At the parties' request, the district court severed the 2016 case against Infinera from the earlier-filed litigation and consolidated it with the 2018 Infinera litigation. This consolidated action is before us in this appeal.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The Fifth Circuit "review[s] the district court's legal conclusions, including its interpretation of contracts, de novo." *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 777 (5th Cir. 2006). The Agreement is governed by New York law, pursuant to which a "written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms." *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013).

On appeal, Oyster argues that the district court erred by extending the release to cover Infinera, which only became an Affiliate after the effective date of the release.  It also contends that the license cannot be applied to Infinera, or, at a minimum, can only be applied to infringement *after* Infinera's acquisition of Coriant because licenses are ordinarily prospective and the provisions of the Agreement demonstrate an intent to provide a prospective license only. Although the parties devote considerable attention to the release, this appeal can be fully resolved by focusing on the license granted to Coriant and its Affiliates.  As explained below, review of the Agreement reveals that (1) Infinera obtained a license to the patents-in-suit, and (2) the license was retroactive.

### A.   Infinera, an "Affiliate" of Coriant, Obtained a License to the Asserted Patents

Section 4.1, the license provision of the Agreement, is reproduced in full below:

> Subject to the terms and conditions of this Agreement, Oyster hereby grants to each of the Coriant Defendants, their Affiliates, a non-exclusive, non-transferable, non-assignable (except as provided herein), royalty-free, irrevocable, perpetual, and fully paid-up license, without the right to sublicense, in the Territory under the Licensed Patents, to make, have made, use, offer for sale, sell, import,

> export, distribute, or otherwise supply, provide or dispose of, the Licensed Product.

J.A. 1046. "Affiliates" is defined as including "any Person, now or in the future" who "has Control of a Party hereto." J.A. 1042, § 1.1. "Control," in turn, is defined as including more-than-half decisional ownership. *Id.* "Person" includes any corporation.

The Agreement provides a list of "Licensed Patents," which include the patents-in-suit—*i.e.*, each patent that Infinera is accused of infringing is a Licensed Patent. "Licensed Product," moreover, is defined to include "any Subject Matter made, have made, used, offered for sale, sold, imported, exported, distributed, or otherwise supplied, provided or disposed of, in the U.S. *at any time*, directly or indirectly by or for or on behalf of any of the Coriant Defendants, their Affiliates, or respective predecessors." J.A. 1043, § 1.4 (emphasis added). And, the Agreement broadly defines "Subject Matter" as "regardless of origin, any method(s), process(es), product(s), product line(s), . . . device(s), system(s), component(s) . . . and/or combination(s)" thereof. *Id.*, § 1.7.

We have no doubt that Infinera is Coriant's Affiliate and that Infinera's accused products are Licensed Products. As an owner of 100% of the shares in Coriant, *i.e.*, a Person who has "Control" of Coriant, Infinera falls squarely within the definition of Affiliate. Infinera's timing of obtaining such control is immaterial, moreover, given the Agreement's express language that an Affiliate includes entities having Control of Coriant "now or in future." Oyster's contention that the agreement only applies to those who were "Affiliates" as of the effective date of the license flies in the face of the plain language of the Agreement. The definition of Licensed Product, moreover, broadly includes products made, used, or offered for sale, by, for, or on behalf of an Affiliate. Because Infinera is an Affiliate, under Section 4.1 of the Agreement, Oyster has

granted Infinera a license under the Licensed Patents, including the patents-in-suit, to make, have made, use, offer for sale, sell, import, export, distribute, or otherwise supply, provide or dispose of, its accused products. Accordingly, under the plain reading of the text, Infinera is a beneficiary of the full scope of the license.

As it did before the district court, on appeal, Oyster argues that the license cannot be read to apply to Infinera because of the Agreement's limitations on assignability. Here, Oyster points to Section 13.2, which, in case of an acquisition of Coriant, limits assignability of the Agreement to Licensed Products "substantially developed" before the date of acquisition. Oyster Br. at 40–41 (citing J.A. 1049, § 13.2). In Oyster's view, an acquirer (such an Infinera) enjoys a license only as to Coriant's pre-acquisition products and successors of those Coriant products. *Id.* We are not convinced. As the district court correctly noted, as an Affiliate of Coriant, Infinera independently enjoys a license to the patents-in-suit under Section 4.1. We agree with the district court that any purported assignment of the Agreement is irrelevant because "Infinera's license rights stem *directly* from its status as an 'Affiliate.'" *Oyster*, 2019 WL 2603173, at *10.

We are likewise not convinced by Oyster's argument that Infinera's acquisition of Coriant breaches the Agreement's "no circumvention" clause, § 14, by which each party covenanted not to act through or in conjunction with any Affiliate or Third Party to circumvent or frustrate the purposes of the Agreement. Relying on its flawed reading of the assignability clause, Oyster insists that one purpose of the Agreement was to prevent other defendants, like Infinera, from taking advantage of the Agreement. Oyster Br. 48. But Oyster's stated purpose of the Agreement is unsupported by the text; neither the assignability clause nor any other terms reflect such an intent. Indeed, Oyster agreed to extend a license to Coriant and its Affiliates without limiting the term "Affiliates" in the manner it now

suggests—*i.e.*, by expressly excluding the other defendants from this definition. Accordingly, we conclude that the license applies to Infinera.[2]

## B. Infinera's License Is Retroactive

Oyster contends that, even if Infinera is a licensee, the license cannot be "unlimited in temporal scope." Oyster Br. 49. It argues that licenses are generally prospective while releases are retroactive, and that this principle must be applied to the Agreement. In Oyster's view, the presence of distinct release and license provisions in the Agreement means the license only applies to acts after the effective date of the release, and as to Infinera, only after it became an Affiliate. *Id.* at 50–51. Any other reading, in Oyster's view, "swallow[s]" the release and renders it superfluous. *Id.* at 51. We again disagree.

Although Oyster correctly notes that licenses are *generally* prospective, it ignores the plain text of the Agreement rendering this particular license retroactive. We reject any suggestion by Oyster that licenses can never be

---

[2]    The dissent claims that our decision is premature, citing to two cases filed by appellants asserting fraud in connection with the license agreement at issue here. Dissent at 5. The first has been voluntarily dismissed. Request for Dismissal, *Oyster Optics, LLC v. Coriant (USA) Inc.*, No. 19-CV-354065 (Cal. Super. Ct. Nov. 5, 2019). The second involves a patent not asserted in this case. *See, e.g.*, Complaint at 4, *Oyster Optics, LLC v. Infinera Corp.*, No. 2:19-cv-00257 (E.D. Tex. July 29, 2019). No claims of fraud were ever made in this case, either in response to the assertion that the license provided a complete defense to the claims of infringement or otherwise. The only question before the district court, and now this court, is the meaning of the license agreement, which both parties assert is clear on its face. That is the only issue we decide.

retroactive.  Patent licenses are prospective *unless* the parties make them retroactive with clear language.  That is exactly what the parties did here.  As explained above, the license provision extends to any "Licensed Product," which includes products made, used, or sold, "at any time" by Coriant and its Affiliates.  J.A. 1043, § 1.4.  This clear language makes the license fully retroactive.

In this regard, Oyster's reliance on *Ditzik v. Ergotron, Inc.*, No. 05-73584, 2008 WL 2858765 (E.D. Mich. July 23, 2008) is misplaced.  Oyster contends that our analysis should follow *Ditzik*, where the court concluded a license was temporally restricted even where the definition of Licensed Products encompassed products sold "in the past and in the future."  Oyster Reply Br. 4–5, 28.  A key distinction between the license grant in *Ditzik* and the license from Oyster is that the *Ditzik* license was expressly limited to the "Term" of the agreement—defined as the period from the effective date of the agreement to the expiration date of the patent.  No such limitations exist in the license at issue here.[3]

We also reject the contention that this reading renders the release provision superfluous.  As Infinera correctly points out, the release is broader than the license and does other work in the agreement.  It extends, for example, to Coriant's customers, manufacturers, and suppliers.  It applies, moreover, not just to claims of patent infringement, but to "any and all claims" arising from activities based on "the conduct of the Litigation."  J.A. 1044, § 3.1.  Notably, the release does *not* extend to "products or components" of Third Parties that were "not by, for, or on behalf of" Coriant and its Affiliates, *id.*, buttressing the reading that the release serves to immunize Coriant and its Affiliates'

---

[3]    That same distinction was present in the agreement at issue in *Oyster Optics, LLC v. Alcatel-Lucent USA, Inc.*, 816 F. App'x 438 (Fed. Cir. 2020).

suppliers and manufacturers.  Thus, contrary to Oyster's arguments, the license does not render the release superfluous.  Oyster does not point to any persuasive reason to depart from the plain language of the agreement.

Accordingly, we conclude that Infinera obtained a retroactive license in the patents-in-suit when it became an Affiliate of Coriant.

## CONCLUSION

We have considered Oyster's remaining arguments and find them unpersuasive.  For the foregoing reasons, the district court's judgment is

## **AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**OYSTER OPTICS, LLC,**
*Plaintiff-Appellant*

**v.**

**INFINERA CORP.,**
*Defendant-Appellee*

---

2019-2179

---

Appeal from the United States District Court for the Eastern District of Texas in Nos. 2:16-cv-01295-JRG, 2:18-cv-00206-JRG, Chief Judge J. Rodney Gilstrap.

---

NEWMAN, *Circuit Judge*, dissenting.

The Settlement and License Agreement between Oyster Optics, LLC ("Oyster") and the three Coriant companies, in settlement of Oyster's suit for patent infringement, did not also resolve, without Oyster's intent, Oyster's patent infringement suit against Infinera Corporation ("Infinera"). The Settlement and License Agreement between Oyster and Coriant cannot reasonably be interpreted as absolving Infinera of the liability asserted in Oyster's concurrent infringement suit against Infinera. The district court's ruling is contrary to the law of contracts and is contrary to the rules of integrity of commerce.

My colleagues' affirmance of the district court decision is not only incorrect, but is also not ripe for review, for Oyster is now challenging the *bona fides* of the Coriant Settlement and License Agreement, in the district court and also in California State court.

I respectfully dissent.

## DISCUSSION

In 2016, Oyster initiated infringement actions against the three affiliated Coriant companies, Coriant Operations, Inc., Coriant (USA) Inc., and Coriant North America, LLC (together herein, "Coriant"), charging infringement of eight Oyster patents on network systems that send light waves along optical fibers for digital data transmission. That litigation was resolved by a Settlement and License Agreement dated June 27, 2018, licensing Coriant to use the patented technology and releasing liability for past infringement.

Oyster also filed suit against Infinera in 2016 for infringement of seven of the same patents, and in 2018 asserted an additional patent. The Infinera and Coriant suits were consolidated for some purposes in the district court, but were separated at the joint request of Oyster and Coriant in view of their forthcoming settlement.

After Oyster and Coriant settled their litigation and executed the Settlement and License Agreement, Infinera moved the district court for dismissal of the Oyster-Infinera suit, stating that Infinera's infringement issues were resolved in the Oyster-Coriant Agreement. The Oyster-Coriant Agreement makes no mention of the concurrent Oyster-Infinera litigation. However, the district court granted the dismissal, and my colleagues now agree.

I cannot share this interpretation of the Oyster-Coriant Agreement. It plainly was not Oyster's intent and understanding of its settlement with Coriant. The law of contracts, as well as New York law, which applies to this

Agreement, does not countenance contract interpretation that is contrary to the mutual intent and understanding of the parties to the contract.

Nonetheless, the district court construed the Oyster-Coriant Settlement and License Agreement to license and release Infinera under the Oyster patents, based on the reference to future affiliates in the Agreement. The district court terminated Oyster's litigation against Infinera, accepting that Infinera was now fully licensed, and released from liability for past infringement. Such a result was plainly not Oyster's understanding and intent when it settled with Coriant. "The objective of contract interpretation is to give effect to the expressed intentions of the parties." *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) (applying New York law).

The general law of contracts does not permit contract interpretation contrary to the mutual intention and understanding of the parties. A concealed intention that is material to the contract understanding does not bind the unknowing party, *see* Restatement (Second) of Contracts § 201(2) (1981):

> Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made . . . that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.

A concealed meaning that the concealing party knows would not be accepted by the other party is not a mutual understanding. Restatement (Second) of Contracts § 201(3) (a party to an agreement is not "bound by the meaning attached by the other" as a result of "a failure of mutual assent").

The parties to the Oyster-Coriant Agreement did not have the mutual intent and understanding that this Agreement would license and release Infinera from infringement of Oyster's patents. New York law is clear that "a release may not be read to cover matters which the parties did not desire or intend to dispose of." *Cahill v. Regan*, 5 N.Y.2d 292, 299 (1959). *See also Comm'rs of State Ins. Fund v. Fortune Interior Dismantling Corp.*, 7 A.D.3d 427, 428 (N.Y. App. Div. 2004) ("The scope of a general release depends on the controversy being settled and the purpose for which the release is actually given."). On facts similar to those herein, in *Ditzik v. Ergotron, Inc.*, No. 05-73584, 2008 WL 2858765 (E.D. Mich. July 23, 2008), the court found that there was not an "unambiguous intent to release Plaintiff's claims against any other defendant that might come under common control with [the Defendant] in the future." *Id.* at *4.

A valid contract requires a meeting of the minds on shared knowledge, not concealment of information known to only one side, with knowledge that the concealed information is material. The Oyster-Coriant Settlement and License Agreement was executed on June 27, 2018, and the Infinera-Coriant understanding that Infinera would acquire Coriant was publicly announced on July 23, 2018. Oyster states that it did not learn of the concurrent "secret negotiations" between Coriant and Infinera until documents were produced in discovery, showing that the merger between Infinera and Coriant was in process while Coriant and Oyster were writing the Settlement and License Agreement. Oyster Br. 15.

Coriant's request to include future affiliates in the Settlement and License Agreement must be viewed in the context that existed, to which Coriant's withheld knowledge was highly significant. Oyster states that had it known "[o]therwise, it would have objected." Reply Br. 7. It is noteworthy that Coriant had "confirm[ed] that there is no inadvertent increase in the scope of the rights conveyed,"

and that "Oyster can sue . . . anyone other than Coriant," when questioned in the context of Coriant's customers and suppliers. J.A. 931 (emails between Coriant counsel and Oyster counsel, May 30, 2018).

The Oyster-Coriant Agreement requires the "parties" to dismiss the litigation between Oyster and Coriant, but does not mention dismissal of the litigation between Oyster and Infinera. However, Infinera's present motion to dismiss states that the Oyster-Coriant Agreement requires dismissal of the Oyster-Infinera litigation. Agreement to dismiss litigation cannot be inferred, and the non-disclosure by Coriant negates the court's interpretation of the Oyster-Coriant Agreement as dismissing the Oyster-Infinera litigation based on the inference that Oyster has licensed and released Infinera. *See Davis v. Blige*, 505 F.3d 90, 102 (2d Cir. 2007) (settlements and releases under New York law "are generally retrospective and exclusively between the parties to the settlement. . . . [A]bsent clear language to the contrary, they are not licenses for future use"); *see also Unova, Inc. v. Acer Inc.*, 363 F.3d 1278, 1282–83 (Fed. Cir. 2004) (holding that a release to the acquired company did not extend to the acquiring company's infringement before the acquisition).

The issues of the *bona fides* of the Oyster-Coriant Agreement are being litigated elsewhere. Oyster filed, and then withdrew without prejudice, a complaint in the Superior Court of California, County of Santa Clara for promissory fraud, concealment, reformation of contract, and rescission of contract, No. 19-CV-354065 (Cal. Complaint, Aug. 26, 2019). Oyster also filed suit against Infinera and Coriant in the Eastern District of Texas including counts of fraud and concealment, and the release and license of the Oyster-Coriant Agreement have been pleaded by the defendants. No. 2:19-cv-00257 (E.D. Tex. Complaint, Oct. 28, 2019). Oyster Br. 17–18.

6                              OYSTER OPTICS, LLC v. INFINERA CORP.


In view of these unresolved issues and ongoing litigation, it is inappropriate for this court now to affirm the district court's summary judgment and dismissal.  From my colleagues' contrary ruling, I respectfully dissent.